## AUGUSTA MERKLE v. TOWNSHIP OF BENNINGTON.

*Townships—Injury from defective bridge—Statements as res gestœ—Responsiveness.*

1. How. Stat. §§ 8313-14 giving a right of action for a fatal injury, though in derogation of the common law is a remedial statute and establishes a general rule which applies as well to townships as to other defendants, even though at the time of its adoption townships were not liable for such injuries but became so afterwards

2. An injured person's statement to his physician as to the cause and circumstances of his injury is not admissible as res gestœ if not made until time enough has passed for him to be removed and to get the

doctor. So *held* in an action against a township for fatal injury caused by a defective bridge.

3. The objection that an answer is not responsive is for the party who asks the question to make; he can accept it if he chooses.

4. In an action against a township for an injury caused by a warped plank in a bridge a witness who testified that he had crossed the bridge a month before the accident was asked, "Did you notice the planking?" and answered, "When I went across it was all right." *Held*, that the answer was not fairly open to the objection that it was irresponsive, or an expression of opinion.

5. An answer is not necessarily to be stricken out for uncertainty or ambiguity, but its meaning should be reached by further inquiry.

6. In an action for injury to a person crossing a defective bridge with a team it was error to charge that the fright of the team was no defense *unless the jury found it was caused by something else than the defect*, for that places the burden upon the defense of proving that it was something else; while in fact it was the plaintiff's duty to establish his own case and show the affirmative fact, if it existed, that the defect caused the fright.

Error to Shiawassee. (Newton, J.)   June 17.—Sept. 29.

CASE.   Defendant brings error.   Reversed.

*S. F. Smith* and *Wm. M. Kilpatrick* for appellant.

*Hugh McCurdy* and *Gilbert R. Lyon* for appellee.

COOLEY, C. J.   The action in this case was instituted to recover damages for the death of the plaintiff's intestate, caused, as is claimed, by a bridge being out of repair on a highway in the defendant township. It was brought under the statute of 1848 (Sess. L. p. 31), as amended in 1873. (Pub. Acts p. 127; How. Stat. §§ 8313, 8314), which is a general statute, and in its first section provides that "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwith-

standing the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." The plaintiff recovered judgment in the court below, and the defendant alleges error.

One error assigned goes to the whole ground of action. The action for causing death by wrongful act, etc., is purely statutory, there being none at the common law, and the defense contend that the statute of 1848, upon which the suit is based, has no application to cases of this nature. When that act was passed townships were not liable for injuries occurring in consequence of defects in their bridges : that liability was created by subsequent statutes. *Commissioners v. Martin* 4 Mich. 557 ; *Leoni v. Taylor* 20 Mich. 148 ; *Medina v. Perkins* 48 Mich. 67. Under the subsequent statutes the person injured may recover damages, but it is not. expressly provided that his representative may recover in case of his death. His representative can therefore recover, if at all, only through the application to the case of the statute of 1848. But this, it is said, can only be done by very liberal construction of that statute, which, being in derogation of the common law, is to be strictly rather than liberally construed. Such is the argument.

But the statute of 1848 is in the strictest sense a remedial statute, and as such it should receive not a strict, but a favorable construction. It was passed to remedy a great defect in the law, whereby, through the very severity of the injury which a party's negligence or misbehavior had caused, he in many cases escaped responsibility altogether, though these were exactly the cases in which he ought with most certainty to be held chargeable. But a liberal construction of the statute is not necessary to make it applicable in these cases, for we have only to apply it according to its plain language and intent, and it reaches them beyond question. It is general, and applies " whenever " a death has been caused under circumstances which would have given a cause of action had the person survived. It was not made for cases which might arise under the law as it then was, but it was enacted to establish a general and very wholesome rule, as applicable to

causes of action that might arise under subsequent remedial statutes as to those arising under the common law or under statutes then existing. The trial judge was right in overruling this defense.

In making out her cause of action the plaintiff called Anna Merkle as a witness, who testified that she was then—December, 1884—sixteen years of age; that on July 5, 1881, she went with her father, the intestate, to Owosso in a lumber wagon with two horses after a grist; that the road led across the bridge over the Maple river in Bennington; that in crossing that bridge the witness noticed the planks being broken and movable, and that they rattled when the horses went over them; one plank was warped and lifted up on the west side of the bridge. The horses were a gentle team and went over safely. It was in returning that the injury occurred, and the witness described it as follows : The horses " walked onto the bridge and walked up to the plank; they stepped onto the plank with their front feet, and the nigh horse noticed something wrong, and he turned his head to the right and stepped onto it with his back feet and got caught, and he made one jerk and pushed the wagon sideways, and he went off sideways, and I heard something crack and fall onto the bridge. The tongue fell onto the bridge, and after that fell the wagon turned towards the west and ran down the bank and then turned right upside down. I jumped out into the road just before the wagon turned over. The tongue was down at that time and the horses were trying to get loose from the wagon, and they did get loose from the wagon and ran away. Nothing was broken about the wagon. I noticed before I went home that the whiffletree on the nigh side was broken. I ran across the bridge for help, but did not stay to look at it. I noticed then that the plank was turned over and another one laid across. The plank was on the west side of the bridge, running right across, and another one turned towards the north, so it was out of place then. My father fell onto a pile of stones, and was injured very badly, and was not able to walk." He died some four weeks after the injury.

The plaintiff also produced William Hume as a witness, who testified that on July 5, 1881, he was called as a physician to see Mr. Merkle at Mrs. Cook's house, twenty or thirty rods from the bridge; that he found him in quite a good deal of agony, and on examination found that he had received a severe injury to the back and in the region of the kidneys. Witness made up his mind then that Merkle was seriously injured internally and would probably not recover. He asked Merkle to narrate "how the accident occurred, and he said that when he was driving over the bridge, as the horses got upon the plank, he said it was bowing, that both ends had over the end a 2x4 scantling that laid along the edge to hold the plank down. He said, as the right horse stepped upon that plank, the other end flew up—or the off horse—and scared one of the horses and he jumped, and as he jumped he made a severe lunge and the plank raised up under him and the whiffletree broke and the tongue came down, so it just struck the last plank on the bridge and that threw the tongue to the right and the horses ran and the tongue ran into the ground and he was thrown on a pile of stones and he didn't know anything more until he found himself in Mrs. Cook's."

This evidence was received under exception by the defense, and its reception is one of the errors now relied upon. For the plaintiff it is claimed that these statements of the intestate were admissible as part of the res gestæ, and several cases are referred to as authority.

One of these cases is *Insurance Co. v. Mosley* 8 Wall. 397. In that case the question at issue was whether the decedent had died in consequence of an accidental falling down stairs in the night. His widow was permitted to testify that he got up in the night and went down stairs; that when he came back he said he had fallen down the back stairs and almost killed himself; that he had hit and hurt the back of his head in falling, and he complained of his head and appeared faint and vomited. She was up with him all night, and he appeared in great pain. These declarations were held to be properly thus proved, on the ground that they were of

the nature of res gestæ, and substantially contemporaneous-with the main fact in issue.

*Jordan v. Commonwealth* 25 Grat. 943, is another of the cases relied upon. There the question was one of identity of parties who had robbed a woman. The prosecution was allowed to prove that within a few minutes of the robbery the woman gave a description of the robbers to the witness, and that the latter pursued after the parties and caught the respondent,. who corresponded to the description which had been given to him of one of the robbers. It was very properly held that what the woman thus promptly said was part of the res gestæ. Similar to this in the promptitude with which the declarations followed the criminal act is *People v. Vernon* 35 Cal. 49, where they were also held admissible. *Burns v. State* 61 Ga. 192, is to the same effect, but it appears to have been decided upon a section of the Code.

In the case of *Waldele. v. Railroad Co.* 29 Hun 35, the time which had elapsed after an alleged injury by a railroad train was twenty or twenty-five minutes, and a witness was permitted to testify that the party told him he got hit; that there was a long train, and he stood waiting for it to go, and an engine followed and struck him. This case may be considered authority for admitting the declarations of Merkle that his injury had come from an accident at the bridge, but. it scarcely goes further.

The cases of *Driscoll v. People* 47 Mich. 415; *Stewart v.. Brown* 48 Mich. 383; *People v. Simpson* 48 Mich. 474; and *Brownell v. Railroad Co.* 47 Mo. 239, are scarcely relevant. to this. They were well decided, whether this case should. be ruled one way or the other.

In this case the point chiefly in dispute was whether at the time the bridge was out of repair. There was strong evidence both ways, and it was very important to the plaintiff that she should corroborate as much as possible the evidence of the young daughter. It was for this purpose rather than to show the general fact of injury and the time and place, that the declarations of Merkle were important. But these declarations were not made on the spot and spontaneously;

53 MICH—11

they were not strictly or even substantially contempora-
neous; but they were made after he had been taken to Mrs.
Cook's and a physician had been sent for and procured. They
were then made as a narrative of a past event. One very
good reason for excluding such narratives is that the party
has had time to deliberate and shape them in his own inter-
est, and may be under strong temptation to do so. They are
therefore subject to all the suspicions which attend declara-
tions made by a party in his own interest at any time.

The case of *O'Connor v. Railroad Co.* 27 Minn. 173,
which was also relied upon, is much like that of *Sisson v.
Railroad Co.* 14 Mich. 497, and was decided, so far as this
point is concerned, in the same way. It has no relevancy, as
we think, here.

In this case, after Merkle had been injured by an accident at
the bridge, as it is not disputed that he was, it was for his
interest, if he could do so, to fix the responsibility for the
injury upon the township. To do this, he must show the
bridge to have been out of repair; and it is not necessary to
infer a dishonest purpose in his mind to render his evidence
unreliable. All questions of doubt under such circum-
stances would naturally be looked upon with a biased mind,
and the longer the time allowed for deliberation, the greater
would be the danger that the utterances would be unreliable.
But after such lapse of time as appeared in this case, the
declarations cannot with any propriety be considered part of
the res gestæ any more than if made the next day or the
next year. The affair was all over when Merkle had been
taken to Mrs. Cook's; he had been removed from the scene
of injury; the surroundings were all changed; the time for
exclamation or outcry was passed, and nothing for the pres-
ent remained to be done but to care for the injured man,
leaving investigation into the cause of injury to some more
favorable time in the future. The statements made by Merkle
to his physician were proper enough as between man and
man, but they had no legal value and were therefore erro-
neously admitted.

The defense, in attempting to meet the case of the plain-

tiff as to the bridge being out of repair, called Conrad Dench as a witness and proved by him that he crossed the bridge within the thirty days preceding the time of injury. He was then asked, "Did you notice the planking?" and replied, "When I went across, it was all right." The answer on motion was stricken out. The ruling is now supported in argument on the grounds—*first*, that the answer was not responsive to the question; and *second*, it was an expression of opinion, and for that reason not proper. The objection that an answer is not responsive, is one to be made by the party who puts the question; not by his antagonist. If the answer is in itself proper evidence, the party who is examining the witness has a right to take and retain it if he chooses to do so. His doing this merely saves him the trouble of putting another question to draw it out. But in this case it is only on a technical construction that the answer could be held not responsive. The witness was fairly notified by the question put that the purpose was to prove by him the condition of the planking as he found it, and he answered at once that the planking was all right. And in so far as this answer can be considered the expression of an opinion, we do not think the cases of *Stange v. Wilson* 17 Mich. 342, *Ryerson v. Abington* 102 Mass. 526, and *Kelley v. Fond du Lac* 31 Wis. 179, which are cited in support of the ruling, are in point. The first two certainly are not, and the third only decides that witnesses who are not experts cannot be allowed to testify to their opinions whether a certain bridge is or is not safe for travel. That was not the question to which Dench was called. One side affirmed, and the other denied, that a certain plank was warped loose, liable to tip up when a horse trod upon it, etc. When Dench, called as a witness on this controversy, said "The planking was all right," no reasonable man could have understood him as meaning that a loose plank, liable to tip up when trodden upon, was safe or right, but the obvious meaning of his answer was that the planking was right in the sense of not being thus warped, loose, etc., and if any one thought the reply uncertain and ambiguous, the true meaning should have been made clear by further

questions and answers, instead of striking this answer out.

The submission of the case to the jury seems in the main to have been careful and accurate, but doubtless by inadvertence the judge apparently put upon the defense a burden which belonged to the plaintiff when he told the jury that " the fright of the team is no defense to this action unless you find it was caused by something else than the defect in the bridge." The important question was whether the defect in the bridge caused the fright; the affirmative fact on that point was to be shown, not the negative. And the affirmative was upon the plaintiff.

Many other errors are assigned and have been examined; but we have discussed those we sustain and find none of the others of sufficient interest to require an extension of the opinion.

A new trial must be ordered.

CAMPBELL and SHERWOOD, JJ. concurred.