VERLINDE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. PLEADING—JOINDER OF COUNTS—SURVIVAL OF ACTIONS—NEGLIGENCE.
A parent may not join in one count his claim for loss of his minor son's services by death with his claim as administrator under the survival act so as to recover for both in one action.

2. SAME — EXECUTORS AND ADMINISTRATORS — "DEATH ACT" — STATUTES.
Nor can an administrator combine in one count a claim under the death act with a claim under the survival act.

3. PARENT AND CHILD—ACTION FOR WRONGFUL DEATH—INFANT.
Independent of statute, the father could only recover for the loss of his infant's services accruing between the injury and death; no cause of action surviving to the administrator for loss of services to the parent.

4. SAME—ASSIGNMENTS—DAMAGES.
No assignment of a cause of action for loss of services which he did not possess, could be made by the father.

5. PLEADING—AMENDMENT.
The objection that a declaration contained a cause of action for the damages to a minor's estate with a cause of action of the father for loss of services, assigned to the administrator, can be obviated by amendment.

6. RAILROADS—NEGLIGENCE—DUTY TO TRESPASSERS—INFANTS.
A railroad company owes a duty to a child riding on a freight car, without permission, to use ordinary care to prevent injury from active negligence.

7. SAME—PUTTING TRESPASSERS OFF TRAIN.
It may not be said, as a matter of law, that it was not active negligence for a brakeman in a threatening manner to order off boys riding without right on a freight train while the cars were moving and another train approaching on an adjacent track.

8. SAME—BRAKEMAN—MASTER AND SERVANT—SCOPE OF AUTHORITY.
Under rules of a steam railway company, requiring employés to render assistance in carrying out rules; subjecting trainmen to the orders of conductors and to the rules for conductors; forbidding the carrying of persons without permission or right on freight trains, and requiring great precaution against possible robbery of cars, the act of a brakeman in frightening boys off a train in motion, in the apparent exercise of an authority which he supposed he had, was an act within the scope of his authority.

9. SAME.
Testimony that brakemen were accustomed to eject trespassers from trains is insufficient to prove authority unless it is also shown that the acts were not done in pursuance of the conductor's direction and authority.

10. SAME—NEGLIGENCE—PROXIMATE CAUSE.
Whether the act of the brakeman was negligent and was the proximate cause of the boys' jumping in front of the approaching train was for the jury.

Error to Otsego; Sharpe, J.   Submitted January 12, 1911.  (Docket   No.   81.)   Decided   March   13,   1911. Rehearing applied for May 4, 1911.   Settled pending decision by court.

Case by Charles Verlinde, administrator of the estate of Peter Verlinde, deceased, against the Michigan Central Railroad Company for the negligent killing of plaintiff's decedent.   Judgment for plaintiff.   Defendant brings error.   Reversed.

*George L. Alexander* (*Humphrey, Grant & Baker*, of counsel), for appellant.

*W. L. Townsend* (*De Vere Hall*, of counsel), for appellee.

BLAIR, J.   Plaintiff brings this action as administrator of the estate of his son, Peter Verlinde, to recover damages for his death, alleged to have been caused by the negligence of defendant.   Immediately prior to his injury, Peter, then 13 years of age, and an older boy, were unlawfully riding upon defendant's train of flat cars, which was moving north on a side track at the rate of four or five miles an hour.   When first seen, the boys were lying side by side about in the center of a flat car, flat on their stomachs, with their heads sticking up and facing north. It was the intention of the boys to ride a short distance, and then jump off.   A brakeman stood upon a flat car three or four cars south of the one the boys were on, talking with a man who intended to ride to the highway crossing and then jump off.   When the brakeman saw the boys, he said, " he would have to put them off the train, that he couldn't let them ride," and started towards them. At the same time a locomotive was pushing a car of bark south on the main track to put into a freight train on such track, which was a few feet east of, and parallel with, the side track.   The conductor of the train on the main track stood near the highway crossing.   When the boys were

within about half a car length, the conductor called to them that the brakeman was coming. When the conductor spoke, they turned their heads and saw the brakeman coming, who told them to " get to hell out of here." The Ward boy rose up first, and, as he rose up, the Verlinde boy rose, and the Ward boy took the Verlinde boy by the shoulder, and they both leaped at once. At the time they jumped, the car of bark was only a few feet distant. They fell as they struck the ground, and were run over. Peter lived an hour and a half or two hours after his injuries. The boys might have jumped off on the west side with comparative safety.

The declaration contains only one count, and avers the right of the father and mother to recover damages for pecuniary loss and injury, and the deprivation "of the value of the services, assistance, aid, comfort, society, and prospective earnings of intestate until he would have arrived at the age of 21 years," to the amount of $5,000, and, also, that intestate would, after becoming 21 years old, have earned $40 a month, and, in consequence of his injuries, he suffered great pain, and his estate has suffered a loss thereby through pain and suffering and what he would have earned after he became 21 years old during his expectancy of life, for which a right of action to recover $10,000 has accrued to his administrator.

Defendant pleaded the general issue. At the beginning of the testimony, defendant's counsel objected to the reception of any testimony, for the reason that there was a misjoinder of causes of action in one count. The objection was overruled and exception taken. Later in the course of the trial, the following paper, executed by the parents, was received in evidence against the objection and exception of counsel for defendant:

"We, the parents of Peter Verlinde, formerly of Waters, Michigan, now deceased, hereby severally surrender to the estate of said Peter Verlinde, all right of action for damages for the injuries sustained by him and his consequent death, on June 20, 1908, through the

claimed negligence of the Michigan Central Railroad Company, and all loss of earnings and earning capacity during his minority, which otherwise would have existed in us, or either of us, hereby granting such rights and claims to the said estate and severally releasing such company from all such rights and claims upon our several parts.

"Dated, GAYLORD, MICHIGAN, February 28, 1910.
"CHARLES VERLINDE,
"MARY VERLINDE."

Certain rules of the defendant and the deposition of a witness as to the custom of brakemen in ejecting trespassers were put in evidence. At the close of plaintiff's testimony, a motion was made for a directed verdict, which was overruled, and the case was submitted to the jury, with instructions that, if they found that the plaintiff was entitled to recover, he was entitled to both classes of damages claimed in the declaration. Plaintiff had verdict and judgment, and defendant brings the record to this court for review upon writ of error.

We are of the opinion that the defendant's objections to the declaration and charge based thereon are well founded. The plaintiff could not combine in one count a claim for loss of his son's services with his claim as administrator under the survival act and recover for both in the same action. *Walker* v. *Traction Co.*, 144 Mich. 685 (108 N. W. 90); *Id.*, 156 Mich. 514 (121 N. W. 271); *Fournier* v. *Railway*, 157 Mich. 589 (122 N. W. 299). Neither could the administrator combine in one count a claim under the death act, so called, and a claim under the survival act and recover both classes of damages. *Dolson* v. *Railway Co.*, 128 Mich. 444 (87 N. W. 629); *Carbary* v. *Railway*, 157 Mich. 683 (122 N. W. 367). Independent of statute, the father could only recover for the loss of services accruing between the injury and the death. *Hyatt* v. *Adams*, 16 Mich. 180; *Merkle* v. *Township of Bennington*, 58 Mich. 156 (24 N. W. 776, 55 Am. Rep. 666). No cause of action survived for loss of services which belonged to the father. *Walker* v. *Traction Com-*

*pany, supra.* And the father could not confer upon the administrator a cause of action for loss of services subsequent to death which he himself did not possess. This objection can be obviated by amendment of the declaration.

It is further urged that there was no evidence that the brakeman had any authority to eject trespassers, and the act complained of was not within the scope of his employment, citing *Randall* v. *Railway Co.*, 113 Mich. 115 (71 N. W. 450, 38 L. R. A. 666); *Hartigan* v. *Railroad Co.*, 113 Mich. 122 (71 N. W. 452). The defendant owed a duty to the boys " to use ordinary care to prevent injury to them arising from active negligence." *Schmidt* v. *Mining Co.*, 159 Mich. 308 (123 N. W. 1122). We cannot say as a matter of law that it was not active negligence to order the boys in a fierce and threatening manner to "get to hell out of here," in view of the surrounding circumstances.

The important question is, therefore, whether the brakeman was acting within the scope of his employment. The brakeman evidently understood that it was his duty to put the boys off, and supposed that he was acting within the scope of his employment in ordering them off, since he said to the witness Norman that "he would have to put them off the train, that he couldn't let them ride." Apparently the conductor of the other train entertained the same view of the brakeman's authority and duty, since he warned the boys of his approach. While the statement of the brakeman would not be evidence of express authority conferred upon him, it would be evidence that the act was done with a view to further the employer's interests, and not from a personal motive on the part of the brakeman to do the act on his own account.

The rules of the defendant printed in this record do not expressly, nor, in my opinion, impliedly, negative the authority of the brakeman to order trespassers off a train. Several of the rules printed in this record do not appear in the record in the *Hartigan Case*, and the brakeman's

want of authority in that case was predicated upon the testimony of the general superintendent of the road. The rules printed in this record appear to me to imply, at least so far as ordering trespassers off the train, such authority upon the part of the brakeman. I quote the following:

"(B) Employés must be conversant with and obey the rules and special instructions. While the special rules are subdivided for convenience, they apply equally to all, and must be observed wherever they relate in any way to the proper discharge of the duties of any employé. If in doubt as to their meaning, they must apply at once to the division superintendent, assistant superintendent or trainmaster for an explanation.

"(D) Persons employed in any service on trains are subject to the rules and special instructions.

"(E) Employés must render every assistance in their power in carrying out the rules and special instructions."

"900. Trainmen report to and receive their instructions from the trainmaster, and while on trains are subject to the orders of the conductor, and at terminal stations must obey the orders of the stationmaster or agent. They must be governed by the rules for conductors in so far as the rules pertain to their duties.

"920. Brakemen report to and receive their instructions from the trainmaster, and while on trains, are subject to the orders of the conductor, and at divisional stations they must obey the orders of the agent or yardmaster. They must be governed by the rules for conductors, in so far as the rules pertain to their duties."

## "FREIGHT CONDUCTORS.

### "SPECIAL INSTRUCTIONS.

"830. Passengers, including employés not on duty, must not be carried on freight trains without proper authority.

"831. Tramps or other persons who have no legitimate business on the trains must not be allowed to ride. Every precaution must be taken to prevent cars being robbed while in transit."

"920. (Same as third rule above.)"

It is made the duty of the brakeman to render every assistance in his power "in carrying out the rules and special instructions," and among such special instruc-

tions to freight conductors is the one quoted, that "tramps or other persons who have no legitimate business on the trains must not be allowed to ride." No discretion is permitted to the conductor as to whether a trespasser shall be permitted to ride. They must not be allowed to ride at all. If the brakeman reports to the conductor that a trespasser is on the train, the conductor must either put him off himself, in which event the brakeman is bound to assist him, or he must order the brakeman to put him off. Section 6287, 2 Comp. Laws, provides that:

" If any person shall refuse to pay his fare or refuse to obey such regulations as may be established for the convenience and safety of passengers, it shall be lawful for the conductor of the train and servants of the company to put him off the train at any usual stopping place, or opposite any dwelling house, the conductor may select."

This statute applies only to passenger trains; and apparently rule 815, printed in the record, applies only to trains carrying passengers, is in pursuance of the statute, and should be interpreted as authorizing " the conductor of the train and servants of the company " to eject a person not entitled to ride. The only limitation upon the authority of the servants is that the conductor is to select the place where the trespasser is to be put off if it is not a "usual stopping place." Again, rule 831 indicates that part of the reason for the rule is the prevention of robbery of the cars, which it would clearly be the duty of the brakemen to prevent, and, under rule B, applies equally to, and must be observed by, the brakemen.

I am further of the opinion that, even though it should be held that the brakeman had no authority to actually eject a trespasser from the train, still, under rule E, it would be his duty to prevent violations of special instruction 831 by ordering trespassers to get off whenever and wherever the conductor would be justified in doing so. Whether the brakeman was negligent in the discharge of his duty was a question of fact for the jury. If he was negligent, the defendant was responsible for its result.

There was also some testimony that it was the custom of brakemen to eject trespassers, but such testimony would not suffice to prove authority unless it also appeared that such acts were not pursuant to the authority of the conductor, and the special instances mentioned by the witness were in pursuance of such authority or of the trainmaster.

It is also contended that the alleged negligence of the brakeman was not the proximate cause of the injury; that it was not the order of the brakeman that caused the boys to jump to the east rather than to the west; that the act of jumping caused them no injury whatever, and was not the proximate cause of the injury.

" The proximate cause of their injury was their being run over by a train coming from another direction, and which was being moved in a proper and ordinary way," etc.

This question is to be determined in the light of the situation at the time the brakeman gave the order, the character of the order, and the manner of the brakeman. The brakeman was walking directly towards the approaching car of bark, and the jury might well infer that he saw it, and that he heard what the conductor said, since the man talking with him heard it. It was a question of fact for the jury whether a reasonably prudent man ought not to have anticipated that the boys would be so frightened and startled as to lose their self-control and jump at once to escape the immediately threatening danger without regard to other dangers.

For the error above referred to, the judgment is reversed, and a new trial ordered.

, MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.