LINCOLN *v*. DETROIT & MACKINAC RAILWAY CO.

1. ESTATES OF DECEDENTS—DEATH—EXECUTORS—NEGLIGENCE.

Under the death act (3 Comp. Laws, §§ 10427, 10428; 5 How. Stat. [2d Ed.] §§ 13702, 13703), conferring a right of action on the personal representatives of a decedent for his death by negligence, and in favor and for the benefit of persons deprived of decedent's care and support, a new right of action arises and the cause of action may not be said to survive as it does under the survival act. 3 Comp. Laws, § 10117 (5 How. Stat. [2d Ed.] § 12761).

2. EXECUTORS AND ADMINISTRATORS — RECOVERY FOR LOSS OF EARNINGS—INFANTS—MINORS—SURVIVAL ACT.

Although the measure of damages recoverable by the representatives of a deceased infant differs from that which the minor could recover in an action as plaintiff for personal injuries, the cause of action is based on the same wrongful act, and the right which is conferred by the death act, so called, would authorize the personal representative to maintain an action and recover damages in respect of the act or default within the meaning of the statute; hence his administrator could recover for his negligent and wrongful death by drowning, although the infant would not be entitled to maintain an action for his lost earning power, which belonged to his parents until he reached his majority.

3. DEATH — NEGLIGENCE — PRESUMPTIONS — CONTRIBUTORY NEGLI-
GENCE.

Where the decedent was drowned, as plaintiff claimed,
because defendant's agents intrusted him with a leaky
and insufficient boat, which had not been properly re-
paired or inspected, and there were no eyewitnesses of
the accident, it is to be presumed, on the trial, that the
deceased, an infant, exercised ordinary caution.

4. SAME.

The right of action also differs from that which the dece-
dent might have maintained for injuries, if he had not
been killed; the statute does not transfer a right of
action to the estate of the deceased, but confers a new
right, based on different principles, constituting an asset
of the estate.

5. SAME—RAILROADS—EVIDENCE.

Evidence that decedent and his companions hired a boat
of defendant's agent, at a resort; that said agent per-
mitted the deceased, a minor, to overload the boat with
passengers, although sufficient larger boats were present
and might have been used; that the deceased asked for
a larger boat, and was told that the one he had would
do; that it was unseaworthy and leaked; that pieces of
the woodwork of the boat were afterwards found float-
ing showing a decomposed condition of the wood, and
the air tank, supposed to be nonsinkable, was full of
water and only floated because of the buoyancy of the
wood to which it was attached, sufficiently presented a
question of fact for the jury, and the trial court erred
in directing a verdict for the defendant upon counsel's
opening statement of the proofs proposed to be offered.

Error to Arenac; Sharpe, J. Submitted January
8, 1914. (Docket No. 11.) Decided March 26, 1914.

Case by Lansing E. Lincoln, as administrator of
the estate of Ion Lincoln, deceased, against the De-
troit & Mackinac Railway Company for the wrongful
death of decedent. Judgment for defendant on a ver-
dict directed by the court. Plaintiff brings error.
Reversed.

*William C. Cook* and *Tom Bechraft,* for appellant.

*Henry, Henry & Henry (James McNamara,* of counsel), for appellee.

STONE, J. The defendant owns and operates a railway system running from Pinconning, Bay county, to Linwood in said county, and elsewhere. It owns, in connection with its railway system, a pleasure resort located along its right of way at its station at Linwood, which resort is contiguous to the waters of Saginaw bay. In connection with this summer resort, it operates and controls certain amusement features, to wit, stands, bathing, boating, and other devices for the amusement of the public, for profit.

On June 17, 1912, plaintiff's intestate, a boy 16 years of age, was a passenger for hire on excursion rates from his home in Pinconning to said summer resort, to attend a school children's picnic thereat. Upon his arrival at said resort he secured a ticket from the defendant's ticket agent for the use of one of defendant's rowboats. He presented the ticket to another agent of defendant who had the boats in charge, and obtained a certain boat known as "D. & M. Ry. Co. No. 22" from the boat tender, which was a 14-foot steel rowboat. The boat was obtained by plaintiff's decedent for the purpose of taking a row on the waters of the bay, in company with three companions of about the same age. Soon after leaving the landing the children were lost sight of, and it was afterwards discovered that they had been drowned. The action was brought under what is termed the "death act" to recover the pecuniary damages which it is claimed the father and mother have sustained by the death.

The declaration, after averring the duty of the defendant, alleges that it failed to provide plaintiff's intestate and his three companions a reasonably safe

and seaworthy boat; that it failed to provide for a careful and prudent inspection of said boat as to its repair before leasing the same as aforesaid; that it failed to maintain the ends, side, and bottom of said boat free from holes and leaks so that water could not enter to the inside of said boat when in use by plaintiff's intestate and his companions for rowing purposes upon said water; that it failed to maintain the strip of wood around the inner side of said boat, to which were attached the prow and stern seats, to which seats were attached the air bulkheads or tanks, free from rot and other defects, etc., and alleging that it failed in some six other particulars, including that of permitting said boat to be overloaded, and that said boat was a two-passenger boat, etc.

The trial court having directed a verdict for the defendant upon the opening statement of plaintiff's counsel, without receiving any evidence, it becomes necessary to refer to such statement. In such statement plaintiff's counsel stated, in substance, that he would show upon the trial that the strip which went around the inner side of the boat, to which was attached the seats, was of wood; that at the time the defendant's agent permitted decedent to get into the boat to go upon the water for a boat ride, he permitted decedent to load into what was really a two-passenger boat four people, although decedent asked for a larger boat, but was told that the boat was large enough; that this was the first day of the year that the rowboats were placed for the use of the public; that they had not been inspected to determine whether or not they were in a seaworthy condition, and safe repair; that decedent and his companions left the dock at said resort between 11 and 12 o'clock a. m., and that a watch found in the pocket of one of the decedents had stopped between 12 and 1 p. m.; that when last seen the boat and party were about three-quarters of a mile out from shore; that at the time the boat left

the dock in charge of said party, it was in bad condition, and water was entering into the boat through seams in the rusting metal, it being an old boat, and had not been repainted or overhauled; that there were lying upon the beach and at hand larger boats of sufficient capacity to carry four and six passengers; that the hull of the boat furnished by defendant to decedent was constructed of steel; that the boat was not found, but that there were found floating on the surface, supported by the rear seat, the stern bulkhead and the boat mark, "Boat No. 22 D. & M.;" that the bulkhead under the seat was an oblong can, which should have been airtight; that around the edge of this seat, when it was found, there were several screw nails still sticking through the wood of the seat board; that on the ends of these screw nails were particles of decomposed rotten wood still adhering, the screw nails having pulled loose from the boat; that the air tank, which should have been nonsinkable, was full of water, and only floated by reason of the board's buoyancy; that although the inspector was there he had received from defendant no orders to inspect said boat; that it had been the custom of defendant in prior years to furnish a beach patrol with a field glass, but that no patrol was provided by defendant at this time; that the bay or water adjacent to this resort was very dangerous, and subject to sudden wind squalls—all of which was known to defendant, but not to decedent, and that defendant paid no attention to the safety of the plaintiff's decedent and his companions. Damages were claimed under sections 6308 and 6309, 2 Comp. Laws (3 How. Stat. [2d Ed.] §§ 6663-4), relating to railroad companies, and sections 10427 and 10428, 3 Comp. Laws (5 How. Stat. [2d Ed.] §§ 13702-3).

It was the claim of the defendant that by a proper construction of the statutes, above cited, there could

179 MICH.—13.

be no recovery in the case, because if death had not ensued, the "party injured," Ion Lincoln, could not have sued the defendant for the recovery of his earning power, for that belonged to his parents, and also for the further reason that the cause of death was wholly conjectural.

The trial court, after a lengthy argument by counsel, but without stating any reasons therefor, directed a verdict and judgment for the defendant. The plaintiff has brought the case here by writ of error, and by proper assignments of error he claims:

(1) That under the statutes above cited, the plaintiff may maintain an action for the drowning of his intestate, who was a minor 16 years of age, occasioned by the wrongful act, neglect, and default of defendant, in having furnished plaintiff's intestate with an unsafe and unseaworthy boat; (2) that death by drowning is an instantaneous death; (3) that the measure of damages would be the amount found by the jury that they should deem fair and just with reference to the pecuniary injury resulting from such death, to the persons who may be entitled to such damages when recovered, to wit, the earning power of decedent from the time of his death until he became 21 years of age, less what it would cost for his maintenance, under the rule as stated in *Black* v. *Railroad Co.*, 146 Mich. 568 (109 N. W. 1052) ; (4) that damages recoverable under the statutes cited are held to be assets of decedent's estate, and should be so considered, even before recovery had thereunder; (5) that the case as stated by counsel did not leave the cause of death conjectural.

We quote the following from the brief of defendant and appellee:

"In the statements made by plaintiff's counsel in the circuit court and in his brief filed in this court, the following admissions are made, which to some extent limit the scope of discussion on the questions of law. (1) That plaintiff's decedent, Ion Lincoln, was a minor, 16 years of age at the time of his death; (2) that plaintiff's decedent came to his death on the

17th day of June, 1912, by drowning; that no one was a witness to the occasion of his death; (3) that the death of plaintiff's decedent was instantaneous; (4) that the measure of damages recoverable in this case was plaintiff's decedent's 'earning powers up to the time he became of age, less what it would cost for his maintenance.' "

Also quoting plaintiff's third proposition as above set forth:

"(5) That no damages can be recovered under the common law for the death of an individual; (6) that no recovery can be had in this case, other than by virtue of the statute laws of this State, viz.," referring to the statutes cited by plaintiff.   *   *   *
"We shall assume that each and every one of the above allegations is agreed upon and conceded to be true, and from such premises we shall briefly consider the law which must control."

1. We summarize the following from the American authorities: The death loss act of the English statute of 1846 (St. 9 & 10 Vict. 93), commonly called "Lord Campbell's Act," and the various laws of a similar kind that have been modeled after it, gave a new cause of action unknown to the common law, for the benefit of certain designated classes of surviving relatives. Such relatives do not take the cause of action for damages to the deceased by transfer to them by operation of law, or otherwise, but are enabled by the statute to recover the pecuniary loss to themselves caused by the wrongful taking off of the decedent, the continuation of whose life would have been beneficial to them. The action accrues to the surviving beneficiary mentioned in the statute by reason of the death of the injured person caused by the wrongful act of another. It is strictly not proper to say that it is a cause of action which survives; it is rather a new action given by sections 10427 and 10428, 3 Comp. Laws (5 How. Stat. [2d Ed.] §§ 13702-3), which can be brought, not for the benefit of the estate but solely for the benefit

of the beneficiaries named in the statute. The above sections, when compared with section 10117, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12761), are made plain. They refer to entirely distinct losses recoverable in different rights. Section 10117 refers to the right of the deceased for the loss and injury occasioned to him. Sections 10427 and 10428 refer to the right of the surviving relatives as beneficiaries for the loss to them. Both are dependent on the injury. The language of one provision is that "actions for personal injuries shall survive," and of the other "in case of the death of a person by the wrongful act of another." Section 10117 creates no new liability, but prevents the lapsing by death of an old one, while sections 10427 and 10428 create a new liability, one not known to the common law.

The case of *Read* v. *Railway Co.*, L. R. 3 Q. B. Div. 555, is often referred to. The decision there is only to the effect that if an injured person have satisfaction of his claim before death, the subsequent death from the injuries does not confer a right of action upon surviving relatives; that such right exists only where there is an existing claim for damages therefor at the time of his death. Justice Blackburn, who delivered the opinion, said, in substance, that the proper construction of the statute is that it gives a right of action to certain surviving relatives of a person when death was caused by the wrongful act of another, where he had not received satisfaction in his lifetime, and that to go further would be straining the language of the law. The language of our statute (section 10427) is that liability of the wrongdoer exists where the deceased could have recovered, if death had not ensued. That clearly excludes the idea that where the decedent receives satisfaction for his injuries, the conditions requisite to the right of surviving relatives may exist notwithstanding. There is nothing in

*Read* v. *Railway Co.* in conflict with *Blake* v. *Railway Co.*, 10 Eng. Law & Eq. 443, where, in a very instructive opinion by Coleridge, J., it is said that Lord Campbell's act does not transfer to the surviving relatives mentioned the claim for damages previously possessed by the deceased, but gives to them an independent cause of action for damages peculiarly incident to their relations to the deceased. As was well said by Marshall, J., in *Brown* v. *Railway Co.*, 102 Wis. 146 (77 N. W. 751, 44 L. R. A. 579), in speaking of the last two cited cases:

. "The two cases are often cited to opposite views, but are in fact, when correctly understood, in perfect harmony. The one holds that the right of the relatives named in the statutes is separate and distinct from that possessed by the deceased; the other, that the right of the relatives is contingent on the death of the injured person without having satisfied his claim for damages."

See *Id.*, 102 Wis. 137 (77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579).

In Cooley on Torts (1st Ed.), at page 263, that eminent author, in speaking of Lord Campbell's act, says:

"It is seen, on a perusal of this statute, that it gives an action only when the deceased himself, if the injury had not resulted in his death, might have maintained one. In other words, it continues for the benefit of the wife, husband, etc., a right of action which, at the common law, would have terminated at the death, and enlarges its scope to embrace the injury resulting from the death. If, therefore, the party injured had compromised for the injury, and accepted satisfaction previous to the death, there could have been no further right of action, and consequently no suit under the statute. It is a logical conclusion, also, that if the negligence of the person killed contributed proximately to the fatal injury, no action can be maintained on the statute, because he himself could have brought none had the injury not proved fatal. So if

the injury was caused by the negligence of a fellow-servant, no action will lie under the statute against the master, unless the statute, by construction, appears to give it in such case. A question has also been made in some States whether suit could be maintained where the death was instantaneous; and in Massachusetts, under a somewhat nice and technical construction of the statute, it was decided that the action would not lie in such case. But probably under no existing statute would it be so held now."

In speaking of the measure of damages in such action, at page 272, the same author says:

"If a parent sues for the killing of a minor child, who is yet too young to render services, it is manifest that for the time being there could be no pecuniary loss whatever, and whether the child, if living, would ever become serviceable, must be matter for speculation only. Yet, as the statutes plainly give the right of action for the benefit of the parent, without restriction to circumstances, but manifestly assume that there is some injury in every case, the right to recover in these cases must be deemed unquestionable"—citing cases.

The act known as "Lord Campbell's Act," and frequently referred to as the "death act," was adopted by the legislature of this State in 1848. With a slight amendment in section 2, indicated below, the act is now embraced in sections 10427 and 10428, 3 Comp. Laws.

As originally enacted it was as follows [Act No. 38]:

"SECTION 1. Be it enacted by the Senate and House of Representatives of the State of Michigan, whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and. recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding

the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

"SEC. 2. Every such action shall be brought by, and in the names of the personal representatives of such deceased person, and the amount recovered in every such action, shall be *for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin* in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate; and in every such action, the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, to the wife and next of kin of such deceased person."

In section 2 amendment was by striking out words in italics and inserting "distributed to the persons and."

Counsel for defendant contend that the clause of the statute which must control is the following:

"And the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof"—

and the claim is asserted that, had not death ensued, Ion Lincoln could not have maintained an action for the recovery of his earning power, for that would belong to his parents. We do not agree with counsel's construction of this language. We have already shown, by quotation from Cooley on Torts, what that author understood by the words in parenthesis in the above quotation. He says:

"It is seen, on a perusal of this statute, that it gives an action only when the deceased himself, if the injury had not resulted in his death, might have maintained one."

The author then illustrates by showing that if the injured party had compromised for the injury, and

accepted satisfaction previous to his death, there could be no further right of action, or if he had been guilty of contributory negligence, no action could be maintained on the statute, because he himself could have brought none had the injury not proved fatal. He then proceeds to show that if the injury was caused by the negligence of a fellow-servant the result would be the same. Let us suppose that instead of having been drowned the decedent had, by the wrongful act of the defendant, lost a leg or an arm. Would it be contended that he, although a minor, could not, in such case, maintain an action for the injury, including his pain and suffering? True his measure of damages in such a case would be different from that of the plaintiff in this case. But that fact does not meet or answer the question. The statute does not say that he must be able to maintain the *same* action and recover the same damages, but "an action and recover damages in respect thereof." In respect of what? Manifestly, for the same wrongful act, neglect, or default. So we say that, although the measure of damages may differ, the cause of action is the same; that is, the wrongful act, neglect, or default. We are of opinion that counsel place a wrong interpretation upon the language of the statute.

It is also claimed by defendant that the case of *Verlinde* v. *Railroad Co.*, 165 Mich. 371 (130 N. W. 317), disposes of the question in favor of the contention of the defendant. That action was brought under the "survival act," so called; the boy having lived two hours after his injury. The declaration contained one count, and averred the right of the father and mother to recover damages for pecuniary loss and injury, and the deprivation "of the value of the services, assistance, aid, comfort, society, and prospective earnings of intestate until he would have arrived at the age of 21 years," to the amount of $5,000, and also

that intestate would, after becoming 21 years old, have earned $40 a month, and, in consequence of his injuries, he suffered great pain, and his estate had suffered a loss thereby through pain and suffering, and what he would have earned after he became 21 years old during his expectancy of life, etc. At the beginning of the testimony, defendant's counsel objected to the reception of any testimony, for the reason that there was a misjoinder of causes of action in one count. The objection was overruled and exception taken. Later in the course of the trial, the following paper, executed by the parents, was received in evidence, against the objection and exception of counsel for defendant:

"We, the parents of Peter Verlinde, formerly of Waters, Michigan, now deceased, hereby severally surrender to the estate of said Peter Verlinde, all right of action for damages for the injuries sustained by him and his consequent death on June 20, 1908, through the claimed negligence of the Michigan Central Railroad Company, and all loss of earnings and earning capacity during his minority, which otherwise would have existed in us, or either of us, hereby granting such rights and claims to the said estate and severally releasing such company from all such rights and claims upon our several parts."

The language of Justice BLAIR, who wrote the opinion, upon the points here involved, was as follows:

"We are of the opinion that the defendant's objections to the declaration and charge based thereon are well founded. The plaintiff could not combine in one count a claim for loss of his son's services with his claim as administrator under the survival act, and recover for both in the same action. *Walker* v. *Traction Co.*, 144 Mich. 685 (108 N. W. 90); *Id.*, 156 Mich. 514 (121 N. W. 271); *Fournier* v. *Railway*, 157 Mich. 589 (122 N. W. 299). Neither could the administrator combine in one count a claim under the death act, so called, and a claim under the survival act, and recover both classes of damages. *Dolson* v. *Railway*

*Co.*, 128 Mich. 444 (87 N. W. 629) ; *Carbary* v. *Railway*, 157 Mich. 683 (122 N. W. 367). Independent of statute, the father could only recover for the loss of services accruing between the injury and the death. *Hyatt* v. *Adams*, 16 Mich. 180; *Merkle* v. *Township of Bennington*, 58 Mich. 156 (24 N. W. 776, 55 Am. Rep. 666). No cause of action survived for loss of services, which belonged to the father. *Walker* v. *Traction Co., supra.* And the father could not confer upon the administrator a cause of action for loss of services subsequent to death which he himself did not possess."

We cannot agree with the contention of defendant relating to the *Verlinde* and *Walker Cases,* for they should be viewed together. In the *Walker Case,* suit was brought under the "survival act," and the damages which the administrator could recover were those which Mrs. Walker could have recovered in her lifetime had she lived to prosecute the suit. Inasmuch as her services belonged to her husband, she not having been emancipated, her personal representative, under that act, could not recover for the loss of the services. The court properly said, therefore: "No action survived for the loss of services, which belonged to the husband."

In the *Verlinde Case,* the father claimed the right to recover for the loss of his minor son's services in an action brought under the "survival act," and the court very properly, we think, said: "No cause of action survived for loss of services, which belonged to the father." In other words, this court said that, inasmuch as the case was brought under the "survival act," the only damages which the administrator could recover were such as the boy could have recovered, and as his services belonged to the father, he could not recover for those. We think that when the distinction between the two causes of action is kept in mind, the difficulty disappears.

We are here dealing with the "death act," as all

agree, and we think that the instant case is readily distinguished from the cases above referred to.

Counsel for defendant have called our attention to *Osborn* v. *Gillett*, decided in the Court of Exchequer of England in 1873 and reported in L. R., 8 Exch. 88. In that case the declaration was for injuries caused to E., plaintiff's "daughter and servant," by the negligent driving of defendant's servant, by reason whereof she afterwards died; claiming as special damages the loss of E.'s services and her burial expenses. There was a special plea that E. was killed "on the spot." This plea was demurred to, and by a divided court the defendant was given judgment on the plea, and it was held that a master cannot maintain an action for injuries which cause the immediate death of his servant. Conceding, what does not appear in the case, that the daughter was a minor, this should be said of the decision: That it was not by a court of last resort, but by a court inferior to the King's Bench and the Common Pleas. It was rendered 25 years after Michigan had adopted Lord Campbell's act, and after this court had construed that act, in *Hyatt* v. *Adams*, 16 Mich. 180. Where a foreign statute has been construed by the courts of the State or country where first enacted, and subsequently such statute is adopted here, the general rule is that such construction will be followed by the courts of the adopting State, upon the principle of comity; but to this rule there are exceptions.

Our attention has also been called to *Griffiths* v. *The Earl of Dudley*, L. R. 9 Q. B. Div. 357, decided in 1882, where Field, J., said:

"*Read* v. *Great Eastern Ry. Co.* is a clear decision that Lord Campbell's act did not give any new cause of action, but only substituted the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived."

We need only say that this language is opposed to

the great weight of authority in this country, as evidenced by the decisions and by textwriters. Cooley on Torts (1st Ed.), p. 264.

In *Mich. Central R. Co.* v. *Vreeland*, 227 U. S. 59, at page 69 (33 Sup. Ct. 192), Justice Lurton, in speaking of Lord Campbell's act, said:

"This act has been, in its distinguishing features, re-enacted in many of the States, and both in the courts of the States and of England has been construed not as operating as a continuance of any right of action which the injured person would have had but for his death, but as a new or independent cause of action for the purpose of compensating certain dependent members of the family for the deprivation, pecuniarily, resulting to them from his wrongful death.    *    *    *

"In one of the earliest cases which arose under the act, Coleridge, J., said:

" 'It will be evident that this act does not transfer this right of action to his representative, but gives to the representative a totally new right of action, on different principles.' *Blake* v. *Midland R. Co.*, 18 Q. B. Div. 93.

"In *Seward* v. *The Vera Cruz*, 10 App. Cases, 59, Lord Blackburn said:

" 'A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived; an action which  *  *  *  is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who under such circumstances suffers pecuniary loss.'

"But as the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to have maintained an action for his wrongful injury. Tiffany, Death by Wrongful Act, § 124. *Louisville, etc., R. Co.* v. *Clarke*, 152 U. S. 230 [14 Sup. Ct. 579]; *Read* v. *Railway*, L. R. 3 Q. B. Div. 555; *Hecht* v. *Railway*, 132 Ind. 507 [32 N. E. 302]; *Fowlkes* v. *Railroad Co.*, 9

Heisk. [Tenn.] 829; *Littlewood* v. *Mayor,* 89 N. Y.
24 [42 Am. Rep. 271]; *Southern Bell Telegraph Co.*
v. *Cassin,* 111 Ga. 575 [36 S. E. 881, 50 L. R. A. 694]."

See, also, *Hurst* v. *Railway,* 84 Mich. 539 (48 N.
W. 44). By the great weight of American authority,
the right to recover in such a case is maintained. *St.
Louis, etc., R. Co.* v. *Henson,* 58 Fed. 531, 7 C. C. A.
349; *City of Chicago* v. *Major,* 18 Ill. 349 (68 Am.
Dec. 553); *Cleveland, etc., R. Co.* v. *Baddeley,* 150 Ill.
328 (36 N. E. 965); *Atchison, etc., R. Co.* v. *Town-
send,* 71 Kan. 524 (81 Pac. 205, 6 Am. & Eng. Ann.
Cas. 191).

In *Watson* v. *Railway Co.,* 70 Minn. 514 (73 N. W.
400), the right is recognized, but as the statute of
that State specially names the recipients, and does
not include the husband, it was held that he could not
recover; and the court calls attention to the feature
that distinguishes their statute from ours. This dis-
tinguishing feature controls the decisions of a num-
ber of the States. *Steel* v. *Kurtz,* 28 Ohio St. 191;
*Davis* v. *Guarnieri,* 45 Ohio St. 470 (15 N. E. 350, 4
Am. St. Rep. 548); *Bream* v. *Brown,* 5 Cold. (Tenn.)
168); *Trafford* v. *Express Co.,* 8 Lea (Tenn.), 96; *East
Tennessee, etc., R. Co.* v. *Lilly,* 90 Tenn. 563 (18 S.
W. 243). There are States, notably Virginia, holding
a different doctrine.

We think that the profession in this State would
be surprised were we to hold, at this late day, that the
father and mother of a minor child, who had been in-
stantaneously killed by the wrongful act of a defend-
ant, could not, through an administrator, maintain
a suit for damages, or a husband for the wrongful
death of a wife. Such right has been recognized in
many cases in this State. *Chicago, etc., R. Co.* v.
*Bayfield,* 37 Mich. 205; *Cooper* v. *Railway Co.,* 66
Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482);
*Rajnowski* v. *Railroad Co.,* 74 Mich. 20 (41 N. W.

847) ; *Nelson* v. *Railway Co.*, 104 Mich. 582 (62 N. W. 993) ; *Miller* v. *Meade Township*, 128 Mich. 98 (87 N. W. 131) ; *Black* v. *Railroad Co.*, 146 Mich. 568 (109 N. W. 1052) ; *Gorton* v. *Harmon*, 152 Mich. 473 (116 N. W. 443, 15 Am. & Eng. Ann. Cas. 461). Many other cases might be added to this list. It is true that the precise question here discussed was not raised in those cases, but the right to maintain the action under the death act was determined. The latest case to which our attention has been called is that of *Grand Trunk Western R. Co.* v. *Gilpin* (U. S. Circuit Court of Appeals, Seventh Circuit), 208 Fed. 126, 125 C. C. A. 278. It was there held that under our statute, an action may be maintained by a husband against a railroad company for the wrongful killing of his wife, by which he lost her services, though death was instantaneous.

That the right of action under the death act constitutes assets of the estate of deceased was held in *Findlay* v. *Railway Co.*, 106 Mich. 700 (64 N. W. 732).

2. This brings us to the second question discussed: Was the cause of death conjectural? It should be borne in mind that there is no living witness to the drowning, and that decedent is not here to give his testimony. In the absence of such testimony the presumption is that he and his companions were in the exercise of due care, which presumption is sufficient to permit recovery if negligence is shown on the part of the defendant. *Gilbert* v. *Railroad Co.*, 161 Mich. 73, 79 (125 N. W. 745) ; *Gates* v. *Beebe*, 170 Mich. 107 (135 N. W. 934) ; *Richardson* v. *Railway Co.*, 176 Mich. 413 (142 N. W. 832). We cannot say, as matter of law, that the defendant was not guilty of any of the alleged negligence.

In *La Fernier* v. *Wrecking Co.*, 129 Mich. 596, at page 604 (89 N. W. 353), this court said:

"While it is true that, simply because an accident has occurred, negligence is not to be presumed, still, in determining the question of negligence, the fact that an accident has occurred may be and should be taken into consideration, in connection with all other facts and circumstances of the case, for the purpose of determining whether in fact there was negligence."

The judgment of the circuit court is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.