LINCOLN *v.* DETROIT & MACKINAC RAILWAY CO.

This case is ruled by *Clark* v. *Railway Co., ante,* 489.

Error to Arenac; Sharpe, J. Submitted October 20, 1916. (Docket No. 23.) Decided July 30, 1917.

Case by Lansing E. Lincoln, administrator of the estate of Ion Lincoln, deceased, against the Detroit & Mackinac Railway Company for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Henry & Henry* (*James McNamara,* of counsel), for appellant.

*William C. Cook,* for appellee.

KUHN, C. J. This case is before us the second time; a verdict directed for the defendant having been reversed on the former appeal and a new trial granted.

*Lincoln* v. *Railway Co.*, 179 Mich. 189 (146. N. W. 405, 51 L. R. A. [N. S.] 710). A second trial was had, which resulted in a disagreement of the jury. On the third trial, by agreement of the parties, the facts as stated in the former opinion of this court, as written by Mr. Justice STONE, were accepted as proven and read into the record. They are as follows:

"The defendant owns and operates a railway system running from Pinconning, Bay county, to Linwood, in said county, and elsewhere. It owns in connection with its railway system a pleasure resort, located along its right of way at its station of Linwood, which resort is contiguous to the waters of Saginaw bay. In connection with this summer resort it operates and controls certain amusement features, to wit, stands, bathing, boating, and other devices for the amusement of the public, for profit. On June 17, 1912, plaintiff's intestate, a boy 16 years of age, was a passenger for hire on excursion rates from his home in Pinconning to said summer resort to attend a school children's picnic thereat. Upon his arrival at said resort he secured a ticket from the defendant's ticket agent for the use of one of the defendant's row boats. He presented the ticket to another agent of defendant, who had the boats in charge, and obtained a certain boat, known as 'D. & M. Ry. Co. No. 22,' from the boat tender, which was a 14-foot steel rowboat. The boat was obtained by plaintiff's decedent for the purpose of taking a row on the waters of the bay in company with three companions about the same age. Soon after leaving the landing, the children were lost sight of, and it was afterwards discovered that they had been drowned. The action was brought under what is termed the death act to recover the pecuniary damages which it is claimed the father and mother have sustained by the death."

Deceased had just graduated from high school, and a few days previous to the accident oral arrangements had been made whereby he was to go into the business, with his grandfather, of raising and selling cattle. It was a partnership arrangement, and each

was to get half of the profits of the business. There were no eyewitnesses of the accident, but when the young people were last seen in the boat the waters of the bay were calm. Miss Grace McKay, one of the teachers, went to the edge of the beach to call them in to dinner, and, while she could not distinguish their faces, she knew who were in the boat. When she called, they waved back to her, and she assumed that, as they were turning, they were coming in to shore, and paid no further attention to them.

As to the condition of boat No. 22 on the day of the accident and a few days before the witnesses disagree. Two witnesses for the plaintiff testified that the boat was unsafe and out of repair. After the accident, a seat board, oars, and air tank were found. Witness Walmsley said that he had the boat out the Sunday prior to the 17th, and found it to be in an unsafe condition, and by sitting in the center seat it was pulled apart in back, and there were rusty screws pulled out of the wood, and he was able to identify the seat board which was found, because he had marked upon it his initials at the time he had it out. Other witnesses testified that they had observed no defect in the boat on the day before and on the day of the accident, when they were out in it. Capt. Cotter, who found the parts of the boat, testified with reference to the parts that he found as follows:

"I put them away, and took care of them for some time. At the time the seat board was found, I think there were some screw nails in it on the champered edge. I examined them a little; it looked as though they were pulled out of it—soft wood of some kind. The wood that still stuck to the screws would naturally be soft, or they would not pull out. It looked as though it was rotten. I do not know how many screws were in the seat board at that time. I think there was one or two or more. I searched Saginaw bay for two weeks for the D. & M. Company, to find the boat; I never found a thing that belonged to the boat proper;

I found stuff that came out of the boat, the clothing and things like that. It is so long ago I have forgotten what the clothing consisted of; there were coats, neckties, and collars, and handkerchiefs. I turned the stuff over to somebody. I did not know any of the people. I think I am quite familiar with the construction of boats. I use wooden boats in my livery business. After I got possession of the air tank, my attention was called to the fact of there being a little water in it, because I could shake it around, and I was wondering how the water got in there."

By agreement between the parties and the consent of the court, this suit and the suit of Nettie M. Clark, administratrix of the estate of Milton Stocum, deceased, were tried together before the same jury, and the proofs, except upon the question of damages, were substantially the same. The jury rendered separate verdicts, and a special question submitted to them. "Did either Ion Lincoln or Milton Stocum, or either of the girls with them at the time of the accident, do any act by way of rocking the boat whereby the boat capsized?" was answered, "No." At the close of plaintiff's proofs counsel for the defendant moved for a directed verdict, on the ground that the plaintiff had not proved any damages, and that there was no evidence of negligence on the part of the defendant. This motion was denied, and at the close of the trial a verdict was rendered for the plaintiff in the sum of $1,500 as damages. Thereupon a motion for a new trial was made, which was also denied by the court.

The first assignment of error relates to the admission of certain testimony concerning the disposition and characteristics of the plaintiff's intestate. Witnesses were allowed to testify that as to his disposition he was kindly and pleasant, and that he was obedient to his teachers and parents, and that his habits were good, and that he gave the valedictory to the graduates of his class. We see no harm in the admission of this

class of testimony, as it had a proper bearing on the question of damages, under the authority of *Black* v. *Railroad Co.*, 146 Mich. 568 (109 N. W. 1052).

Other assignments of error relate to the admission of testimony as to the condition of other boats belonging to the defendant and used by it at the resort, as a result of an examination made within a few days after the accident. It is contended that there is no evidence showing the comparative age of the 13 boats which comprised the boat livery operated by the defendant company, nor the comparative use or condition of these boats. Mr. Kurzrock, defendant's agent, who had charge of the boats for the season of 1912 and for several seasons before that time, testified in a general way that they all appeared to be in the same condition as to repair and general appearance, and that they all looked as if they were of the same age. The admission of this testimony was one of the grounds urged to the trial court in the motion for the new trial, and the learned judge, in denying this motion, said in part, with reference to this question:

"On the decision of this question of fact rests largely the rights of the parties. It is unknown and in dispute. It is incapable of proof by the production of the boat. Must we not, then, resort to inference? And if another fact can be established by proof, which may be used as a basis of inference to the fact in dispute, may we not use it for that purpose? If we concede it to be a fact that these other boats were in a state of repair similar to the one lost, can it be said that evidence of their condition would not raise a fair inference as to whether or not this boat was safe and seaworthy when hired to these boys? If so, then the fact that such similar condition was in dispute renders such evidence only less strong in degree. It will be noticed that the jury were expressly cautioned as to the weight to be given to this testimony. In the charge they were instructed:

" 'Now, lest I forget it, I want to say right here there was some evidence introduced and submitted to you tending to show

what the condition of some of the other boats were that lay on the beach a day or two after this unfortunate drowning oc- curred. I admitted that evidence with considerable reluctance, because you can see how dangerous it is for you to judge the condition that one boat was in by the condition of another boat that happened to lie there. You all, as prudent, careful men, will see that that is dangerous, if you should say that, because a boat was found on the beach in a certain condition, this boat that was lost was in a similar condition. But there was testimony in the case tending to show that these boats probably were all in the same condition, and so I said to counsel that evidence should go in, and I should deem it my duty to caution you as to the weight you should give it. I am not saying that you should not give it any weight; that is for you to say. But I am cautioning you that it is of a different class of evidence, so far as the weight is concerned, from that of some one who had made an examination of this particular boat. And in determining the weight you will give it you must consider the testimony offered. by the defendant as to the condition of these boats, and as to when this boat and other boats like it were repaired, and so on.'

"While it is true, as claimed by counsel for defend- ant, that these boats may have been subjected to more and longer service since purchase or repair, yet it was defendant's duty to have all its boats in a reasonable state of repair, and the fact that those examined by the witness were not, if true, might, it seems to me, under the evidence, be considered by the jury, along with the other testimony submitted, in determining the probable condition of the boat on the day in ques- tion.

"Another thought that presents itself to me is this: The defendant relied on the presumption that, in the absence of evidence to the contrary, this boat was safe and seaworthy. If the boat cannot be produced, was not plaintiff entitled to show the condition of other boats used in the same place and for the same purpose, as tending to rebut such a presumption?"

There is considerable doubt in our minds whether the proof as to the comparative condition of these boats was sufficient to warrant the introduction of this testimony; but, in view of the fact that the judge in his charge cautioned the jury as to this evidence, and

that there was other competent evidence before the jury as to the unseaworthy condition of the boat in question, we are not prepared to say that the admission of this testimony should be held, under the circumstances of this case, to be prejudicial error.

It is also contended that, because of the understanding which had been arrived at between Ion Lincoln, his grandfather, and his father, relative to the future earnings of Ion, he had been emancipated, and that therefore there was no question of damages for the jury. The agreement had not been reduced to writing, and was to be concluded after the day's outing, at which time Ion was drowned. The details had not been closed, and in fact no definite understanding or agreement had been arrived at. Whether or not he was emancipated was left to the jury as a question of fact by the judge in the charge, which in our opinion properly submitted the question. See *Reeder* v. *Moore*, 95 Mich. 597 (55 N. W. 436); *Freeman* v. *Shaw*, 173 Mich. 262 (139 N. W. 66); *Black* v. *Railroad Co.*, *supra; Yost* v. *Railway Co.*, 163 Mich. 564 (128 N. W. 784, 31 L. R. A. [N. S.] 519, Am. & Eng. Ann. Cas. 1912A, 988).

It is also urged that a verdict should have been directed for the defendant, because the proofs did not establish negligence on its part, and because the evidence shows that the cause of the accident is entirely conjectural. This question was considered by this court in its previous decision (*Lincoln* v. *Railway Co.*, *supra*), and we there said:

"In the absence of such testimony [that of a living witness to the drowning], the presumption is that he and his companions were in the exercise of due care, which presumption is sufficient to permit recovery if negligence is shown on the part of the defendant [citing cases]. We cannot say, as matter of law, that the defendant was not guilty of any of the alleged negligence."

It is plaintiff's claim, and there was evidence in support of it, when the young men applied to the defendant's agent for the use of a boat, that they asked for a boat large enough for four, and that he gave them the boat in question, although witnesses testified that the boat was not suitable for four persons, but was rather a two-passenger boat. We are of the opinion that there was sufficient evidence of the negligence on the part of the defendant to warrant the submission of the case to the jury.

We are also satisfied that the charge of the court fairly presented to the jury the claims of the respective parties, and that the instructions of law with reference to them were proper. We have been unable to find any prejudicial error in this record, and therefore would affirm the judgment.

BIRD and MOORE, JJ., concurred with KUHN, C. J.

OSTRANDER, J. For reasons stated in *Clark* v. *Railway Co., ante*, 489 (163 N. W. 964), in which opinion is herewith handed down, judgment is reversed, and a new trial granted.

STONE, STEERE, and BROOKE, JJ., concurred with OSTRANDER, J. PERSON, J., did not sit.