THOMPSON *v.* OGEMAW COUNTY BOARD OF
ROAD COMMISSIONERS.

1. DEATH—MINORS—PECUNIARY INJURY OF PARENT.
   Consideration of loss of services of a minor is permitted in an action under the death act in determining pecuniary injury of a parent (CL 1948, §§ 691.581, 691.582).

2. PARENT AND CHILD—SUPPORT OF PARENT.
   An adult child may be ordered to contribute to the support of parent under proper circumstances (CL 1948, § 401.1 *et seq.*, as amended).

3. DEATH—PARENT'S EXPECTATION OF SUPPORT—AGE OF CHILD.
   The reasonable expectation of support of a parent, rather than any particular age at the time of the death of the child is the test of whether recovery may be had by the parent under the death act for the death of the child (CL 1948, §§ 691.581, 691.582).

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Death § 153.
[2] 39 Am Jur, Parent and Child § 70; 41 Am Jur, Poor and Poor Laws § 7.
[3] 16 Am Jur, Death §§ 196, 209.
[4] 16 Am Jur, Death § 361 *et seq.*
[5] 16 Am Jur, Death §§ 44, 60, 62.
[6] 11 Am Jur, Constitutional Law § 139.
[7] 16 Am Jur, Death § 243.

4. Same—Instructions—Support of Parents After Minor Reached Majority.

Instruction to jury in action under death act for death of 15-year-old girl, which permitted jury to award damages for loss of support after she would have attained her majority, *held*, not a proper basis for granting a new trial, under evidence presented (CL 1948, §§ 691.581, 691.582).

5. Same—Purpose of Act—Common Law—Evidence.

The wrongful death act is a remedial, measure designed to alleviate the common-law rule generally forbidding compensation for wrongful death and lack of proofs of an exact quality should not be allowed to defeat the legislative purpose (CL 1948, §§ 691.581, 691.582).

6. Constitutional Law—Public Policy.

The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.

7. Death—Minors—Damages.

Jury's award of $12,072 under death act to father as special administrator of estate of his 15-year-old daughter who had been killed because of defendant's negligence in maintaining county road, *held*, "fair and just" compensation under evidence showing that father, at time of her death, had been unemployable for several years because of a heart condition, daughter had contributed to family support by $5 per week in addition to performance of household services which permitted the mother to be employed outside the home, funeral expenses amounted to $800.27, and $10,000 was claimed as present worth of services during minority, and daughter contemplated taking over mother's outside job when high school course was completed (CLS 1956, § 242.1; CL 1948, §§ 691-.581, 691.582).

Dethmers, C. J., and Carr and Kelly, JJ., dissenting.

Appeal from Ogemaw; Shaffer (John C.), J. Submitted January 9, 1959. (Docket No. 44, Calendar No. 47,683.) Decided October 13, 1959.

Case by John L. Thompson, special administrator, estate of Elda L. Thompson, deceased, against Ogemaw County Board of Road Commissioners for damages under the death act arising from automobile

collision caused by defective road. Verdict for plaintiff. New trial granted. Plaintiff appeals. Reversed and remanded for entry of judgment on verdict.

· *Peter F. Cicinelli* and *van Benschoten & van Benschoten,* for plaintiff.

*Smith & Brooker* (*Carl H. Smith, Sr.,* of counsel), and *Randall B. Clemence,* for defendant.

EDWARDS, J. This is a suit under the wrongful death act brought by a father acting as special administrator of the estate of his deceased 15-year-old daughter.

The declaration alleged that the girl's death was caused by the negligence of the defendant Ogemaw county board of road commissioners in failing to keep a county road reasonably fit and safe for travel, in violation of its statutory duty. See CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591).

Evidence at the trial showed the existence of a large hole in the west half of Damon road, in Ogemaw county, south of the crest of Darling hill, that the hole had been there for some months prior to the date in question, and that defendant had actual knowledge of its existence.

Plaintiff's daughter was a passenger in an automobile traveling south on Damon road on the night of November 6, 1953. The car she was in struck the hole referred to, went out of control and swerved into the left-hand lane where it collided head-on with an automobile being driven in the opposite direction. Plaintiff's daughter and 3 other persons in the car were killed.

The case was tried before an Ogemaw county jury which brought in a verdict of $12,072 in favor of plaintiff.

Subsequent to verdict, defendant-appellee sought and obtained a new trial on the ground that the judge incorrectly charged the jury on the issue of damages by allowing the jury to consider loss of possible contributions, due to parental dependency, which the minor child might otherwise have made subsequent to her 21st birthday.

On appeal, the issue is presented to us thus:

"In the event of the wrongful death of a minor, may the jury consider and award damages for 'pecuniary injuries' suffered by the surviving parents after the period of the child's minority?"

The testimony pertaining to pecuniary damages upon which the jury apparently based its award may be summarized under 3 headings:

(1) Funeral expenses of $800.27—stipulated.

(2) Loss of services. This item was estimated by plaintiff at $10,000 when asked for a bill of particulars pertaining to his $25,000 damage clause. The testimony presented in relation to the daughter's services included the following:

At the time of death, decedent was 15 years old. She was an intelligent, healthy girl, completing her high school requirements. She earned money as a baby-sitter and contributed to her parents, on an average, $5 to $5.50 per week. Decedent's father suffered from heart trouble, arthritis and hardening of the arteries, sufficiently incapacitating him so that he had been unemployed since 1948. The principal source of family income was derived from earnings of decedent's mother, a cook in a restaurant. In order for the mother to retain this employment, the daughter performed cooking, washing and general housework for the family to the extent of 4 to 6 hours of work each day.

(3) Loss of prospective contributions beyond the age of 21.

In addition to the facts recited above, decedent's father testified:

"*Q.* Mr. Thompson, do you know what was planned for your daughter after she would graduate from high school?

"*A.* She was going to take mother's place and let mother come home.

"*Q.* You mean she was going to work in the restaurant?

"*A.* Yes. * * *

"*Q.* Is that the present job that your wife holds?

"*A.* Yes, sir.

"*Q.* Was Elda agreeable to that plan, sir?

"*A.* Yes, her and her mother used to talk about it. She used to tell her mother she could cook just as good as she could.

"*Q.* Then your wife, what was she going to do at that time?

"*A.* She was supposed to come home. * * *

"*Q.* At the time of the death of your daughter, Mr. Thompson, were you in need of her help both services and contributions?

"*A.* Yes. * * *

"*Q.* Now, Mr. Thompson, in your opinion, under the family circumstances as you have described them here, would you have been in need of your daughter's services and money contributions even after she reached the age of 21 years if she had lived? * * *

"*A.* Yes."

The court's charge on the issue of damages concerned 3 elements: (1) Funeral expenses; (2) The loss of services of the deceased during her minority; and (3) The loss of her future contributions after the 21st birthday.

This appeal pertains to the claimed invalidity of the charge regarding this third element. The trial judge's words follow:

"Now so far as damages that you may find after she would have reached the age of 21 years, they

would be computed and allowed for such period of time as you may find a condition of dependency on the part of the parents to exist, taking into consideration the fact that she might be relieved of such dependency by inability after age 21 through her own death, sickness or otherwise to contribute to her parents; and taking into consideration the fact that such dependency would cease in any event at such time as you may determine from the age, condition of health and life expectancy of her parents that they or the surviving survivor of them would die. Again I caution you that it is the present worth of these various amounts, as I have explained it to you, that it is essential to find."

The trial judge's charge also defined pecuniary injury:

"Pecuniary loss means the money loss, the money injury caused by such death. Now in that connection I might also say that the law does not provide for any damages for sentimental reasons. It uses the word 'pecuniary' which distinguishes it from those other matters which are matters of sentiment, of love and affection and of companionship, and those sort of things which are always present when anyone dies, but the law refers to pecuniary injury."

The question presented by this appeal requires interpretation of the meaning of the Michigan wrongful death act. CL 1948, §§ 691.581, 691.582 (Stat Ann 1957 Cum Supp §§ 27.711, 27.712).* The controlling

---

\* The relevant portions of the statute follow:

"Be it enacted by the senate and house of representatives of the State of Michigan, whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries

statutory language in relation to this case is, "in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death."

. The trial judge in granting defendant's motion for new trial held that he had erred in his jury instruction by allowing consideration of possible future contributions to her parents by this minor after the age of 21.

The statute and Michigan case law interpreting it allow consideration of loss of services of a minor in determining pecuniary injury of a parent. *Black* v. *Michigan Central R. Co.,* 146 Mich 568; *Sceba* v. *Manistee R. Co.,* 189 Mich 308 (LRA1918C, 1090); *Morris* v. *Radley,* 306 Mich 689; *Rajnowski* v. *Detroit, Bay City & Alpena R. Co.,* 74 Mich 20; *Hurst* v. *Detroit City Railway,* 84 Mich 539.

There is, however, a clear distinction between the services of a minor and the contributions of an adult son or daughter to a dependent parent. Such contributions are more than a moral obligation. Under proper circumstances an adult son or daughter may be ordered to contribute such support. CL 1948 and CLS 1956, § 401.1 *et seq.* (Stat Ann 1950 Rev and 1957 Cum Supp § 16.121 *et seq.*).

The pecuniary value of such obligation, voluntarily assumed, has been recognized in Michigan case law.

resulting in death, shall hereafter be brought only under this act." CL 1948, § 691.581 (Stat Ann 1957 Cum Supp § 27.711).

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death." CL 1948, § 691.582 (Stat Ann 1957 Cum Supp § 27.712).

In the case of a dependent parent, proofs that a son 23 years of age had voluntarily undertaken and continued support were held to allow the jury to consider whether or not there was reasonable expectation of continued support in determining damages arising from the son's death. *Judis* v. *Borg-Warner Corporation,* 339 Mich 313. See, also, *MacDonald* v. *Quimby,* 350 Mich 21.

A large majority of State courts hold that recovery may be had for the loss of benefits reasonably to be expected after the majority of the deceased. *Inspiration Consolidated Copper Co.* v. *Bryan,* 35 Ariz 285 (276 P 846); *Bohrman* v. *Pennsylvania R. Co.,* 23 NJ Super 399 (93 A2d 190); *Foerster* v. *Direito,* 75 Cal App2d 323 (170 P2d 986). See, also, *Van Cleave* v. *Lynch,* 109 Utah 149 (166 P2d 244); annotation, 14 ALR2d 485, Measure and elements of damages for personal injury resulting in death of infant.

We do not believe that the age of the child at death (whether before or after majority) is decisive as to consideration of loss of possible future support after the 21st birthday. Nothing in the Michigan statute pertaining to wrongful death suggests such a distinction. CL 1948, § 691.581 *et seq.* (Stat Ann 1957 Cum Supp § 27.711 *et seq.*). The language of the *Judis* and *MacDonald Cases* suggest that the test is reasonable expectation of support rather than any particular age at the time of death.

We note that the trial judge felt that the language contained in *Covell* v. *Colburn,* 308 Mich 240, required him to grant the motion for new trial. Although we read the facts therein as quite different from these, to the extent that the *Covell Case* suggests a different conclusion, it is overruled.

While this decides the basic legal question presented in this appeal some comment may be desirable in this case upon the most difficult of all questions involved in wrongful death cases—how definite must

the evidence bearing upon pecuniary injury be to support a jury award?

It must be recognized at this point that some uncertainty of proof is implicit in the terms of the statute we seek to interpret. The pecuniary injury contemplated by the act requires consideration of the probability of the happening of events which, as of the date of trial, have been permanently barred by the intervention of death.

Briefly put, there can be no such thing as direct evidence of future support when the supporter is dead. This fact alone guarantees that no testimony can be offered in proof of otherwise probable future support or contribution which completely avoids speculation. Indeed the only certainty in relation to such testimony is that no one will ever be able to prove or disprove its validity. It is perhaps for this reason that the statute places emphasis upon "such damages as the court or jury shall deem fair and just."

Lack of proofs of an exact quality should not, however, be allowed to defeat the legislative purpose. The Michigan wrongful death act is a remedial measure designed to alleviate the harsh provisions of the common law which has generally been interpreted as forbidding compensation for wrongful death.* Mr.

---

* The source of the rule is usually attributed to a statement made by Lord Chief Justice Ellenborough in a case decided in 1808. In *Baker* v. *Bolton*, 1 Camp 493 (170 Eng Rep 1033), he said: "In a civil court the death of a human being could not be complained of as an injury; and in this case the damages as to the plaintiff's wife must stop with the period of her existence."

Indeed, the preamble to Lord Campbell's act, 9 and 10 Vict c 93, begins with this language: "Whereas no action at law is now maintainable against a person, who by his wrongful act, neglect, or default, may have caused the death of another person."

The historic origin of this strange rule apparently lay in exclusively criminal nature of actions for wrongful death. One of the penalties was forfeiture to the crown of all goods and chattels of the wrongdoer—thus effectively eliminating any civil action on the part of survivors.

For an interesting discussion of historic background, see *Simp-*

Justice Cardozo, writing for the United States supreme court in relation to a similar enactment, offered this guide for judicial interpretation:

"Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of the law, a new generative impulse transmitted to the legal system. 'The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity by the perpetuation of a policy which now has had its day." *Van Beeck* v. *Sabine Towing Co.,* 300 US 342, 350, 351 (57 S Ct 452, 81 L ed 685).

Fortunately for purposes of our present decision, this case does not present the wrongful death problem in its most difficult form as did *Courtney* v. *Apple,* 345 Mich 223, which recently divided this Court. There is no need here to consider a presumption as to damages. There is substantial evidence tending to prove the pecuniary injury present in the instant case.

Among the important facts we note these: The father of the family was unemployable. The deceased was a healthy and intelligent 15-year-old. She had proved to be a willing worker. She earned money outside the home and contributed it to the family support. She performed household work which freed the mother as a wage earner. The need of this family

son v. *Beardsley,* Muskegon county circuit court No 14,769, Noel Fox, circuit judge. (Opinion available in State law library.)

could reasonably be forecast into the future as could a continuation of the daughter's help and contribution.

It may, of course, be suggested that coincident with or preceding her majority would come a probability of marriage and other responsibilities which would tend to decrease her opportunity to help. This possibility was, we are certain, as much available to the minds of the jurors as it is to ours. Another consideration equally clear from human experience, and equally available to the jurors, is the probability of increased need for and possibility of assistance in the later years of paternal life when a son's or daughter's circumstances are likely to be more stable than in the days of early marriage.

The jury awarded $12,072. Much of this sum is justified by the funeral expenses plus the value of the services of the girl up to majority.

It is obvious that the trial judge felt that if consideration could legally be given to possible contributions beyond the 21st birthday the evidence was sufficient to support the jury award.

We agree with him in this regard. We do not think the award went beyond the stated purpose of the statute or the legitimate limits of the evidence. What the jury deemed "fair and just" compensation for pecuniary injury to this plaintiff finds support in this record.

Reversed and remanded for entry of judgment based on the jury verdict. Costs to appellant.

Smith, Black, Voelker, and Kavanagh, JJ., concurred with Edwards, J.

Carr, J. (*dissenting*). Plaintiff's decedent sustained injuries in a traffic accident occurring on November 6, 1953, between the hours of 10 and 11 p.m., on a public highway in Ogemaw county. Her death

resulted from such injuries, the proofs indicating that she did not recover consciousness following a collision between the automobile in which she was a passenger and another vehicle. This action was instituted by plaintiff, decedent's father, a special administrator of the estate to recover damages under the provisions of the so-called wrongful death act.* It was the claim of the plaintiff that the defendant board negligently failed to maintain the highway where the accident occurred in a condition reasonably safe for travel thereon, and that such negligence was the proximate cause of the accident.

Defendant by answer denied that it was guilty of negligence, and the case was tried in circuit court on the question of liability and the damages recoverable. The jury returned a verdict in plaintiff's favor in the sum of $12,072. Defendant's motion for judgment notwithstanding the verdict was denied, but its motion for a new trial was granted. Plaintiff's motion that a new trial, if granted, should be limited to the question of damages only was denied. Plaintiff, on leave granted, has appealed, claiming that the trial judge was in error in granting a new trial.

The principal question submitted on the appeal has reference to the matter of damages. At the time of the accident plaintiff's decedent, Elda Thompson, was 15 years of age. Plaintiff's claim with reference to recoverable damages resulting from the death was set forth in paragraph 13 of the declaration, as amended, in the following language:

"That in said accident of November 6, 1953, plaintiff's decedent, Elda Thompson, suffered fatal injuries and that as the proximate cause as the result of said accident and from said injuries she died on November 7, 1953; that as a result of said accident, fatal injuries and death, that she, Elda Thompson, then

---

* PA 1848, No 38, as amended by PA 1939, No 297 (CL 1948, § 691.581 *et seq.* [Stat Ann 1957 Cum Supp § 27.711 *et seq.*]).

being 15 years of age, her birth date being December 16, 1937, did leave surviving her the following heirs at law or next of kin, John L. Thompson, father, age 63; Irene V. Thompson, mother, age 47; Velvae Van Wormer, sister, age 29; Olive Thompson, sister, age 26; Ellen Bailey, sister, age 24; Marjorie Brown, sister, age 23; Leah Belle Gifford, sister, age 22; John Thompson, brother, age 18; Walter Thompson, brother, age 14; that her said father, mother and other next of kin and heirs at law were partially dependent upon said Elda L. Thompson, deceased, and that they suffered loss of her earnings by virtue of such death; further, the father and mother of said minor were entitled to her services from the time of her death until she would have otherwise attained the age of 21 years; further, plaintiff claims damages for the special expenses incurred on account of the hospital, doctor and burial expenses which were caused by this accident, these fatal injuries, and said minor child's resulting death; that further the plaintiff claims such damages as are fair and just with reference to the pecuniary loss suffered by the next of kin and/or by her said estate. * * *

"With reference to the pecuniary injury resulting from such death to those persons who may be entitled to such damages when recovered; and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, pursuant to PA 1848, No 38, as amended by PA 1939, No 297."

It was apparently agreed by counsel trying the case in circuit court for the respective parties thereto that the language quoted fairly supported a claim that plaintiff was entitled to damages for pecuniary injury based on contributions that Elda might have made to the support of her parents, after she reached the age of 21, had the fatal accident not occurred. The jury was permitted to consider such claim and presumably arrived at the verdict returned accordingly. The trial judge in submitting the case to the jury charged as follows:

"You should compute and allow the value of the financial support you may find the decedent, under the testimony in this case, would have given to her parents, taking into consideration their need, if any, for such support after she would have become 21 years of age, and you also determine the present worth of that sum if you find there is such testimony. * * *

"Now so far as damages that you may find after she would have reached the age of 21 years, they would be computed and allowed for such period of time as you may find a condition of dependency on the part of the parents to exist, taking into consideration the fact that she might be relieved of such dependency by inability after age 21 through her own death, sickness or otherwise to contribute to her parents; and taking into consideration the fact that such dependency would cease in any event at such time as you may determine from the age, condition of health and life expectancy of her parents that they or the surviving survivor of them would die. Again I caution you that it is the present worth of these various amounts, as I have explained it to you, that it is essential to find."

The motion for a new trial submitted by counsel for defendant alleged, among other bases, that the charge with reference to the damages in question was erroneous. The trial judge so concluded and granted the motion for a new trial, indicating that he considered it unnecessary to pass on other questions raised by said motion. The other grounds presented have not been argued by counsel on this appeal, and, in consequence, we express no opinion as to their merit or lack of it.

The statute on which the instant action is based, the wrongful death act, contemplates the allowance of damages for pain and suffering, for reasonable medical, hospital, and funeral expenses for which the estate of a decedent may be held liable, and also for

the "pecuniary injury" resulting from the death to the persons entitled to the damages recovered. The allowance of damages in a case of this nature must rest on the basis of the proofs submitted on the trial. This Court so held in *Baker* v. *Slack,* 319 Mich 703, with reference to damages for pain and suffering, and the same rule is applicable with regard to the right to recover on the basis of a pecuniary injury on the part of those entitled to such damages as may be awarded under a judgment therefor. In consequence, we are here confronted with the question whether the proofs on the trial in circuit court were sufficient to justify or permit submitting to the jury the question of the allowance of damages to the plaintiff on the ground that by the wrongful conduct of defendant her parents were deprived of contributions that Elda might otherwise have made to their support after she attained her majority.

Plaintiff testified that he was in poor health and unable, because of a heart condition and arthritis, to engage in gainful labor. At the time of the trial the mother, Mrs. Thompson, was working in a restaurant where she had been employed for 2 or 3 months. She was not called as a witness in the case. The claim of the plaintiff with reference to the specific question under discussion appears in the following excerpts from his testimony:

"Q. (*By Mr. van Benschoten*): Mr. Thompson, do you know what was planned for your daughter after she would graduate from high school?

"A. She was going to take mother's place and let mother come home.

"Q. You mean she was going to work in the restaurant?

"A. Yes. * * *

"Q. Was Elda agreeable to that plan, sir?

"*A.* Yes, her and her mother used to talk about it. She used to tell her mother she could cook just as good as she could.

"*Q.* Then your wife, what was she going to do .at that time?

"*A.* She was supposed to come home.   *   *   *

"*Q.* At the time of the death of your daughter, Mr. Thompson, were you in need of her help both services and contributions?

"*A.* Yes.   *   *   *

"*Q.* (*By Mr. van Benschoten*): Now, Mr. Thompson, in your opinion, under the family circumstances .as you have described them here, would you have been in need of your daughter's services and money contributions even after she reached the age of 21 years if she had lived?

"*Mr. Smith*: Objected to as incompetent.

"*The Court*: Answer.

"*A.* Yes."

The record discloses that Elda had 5 sisters and .a brother older than she, and also a younger brother. It does not appear that any of the older children, after they reached their majority, had contributed in any appreciable amount to plaintiff's support or to that of Mrs. Thompson. In fact, plaintiff stated specifically that they had not contributed to him. Whether they were able to do so, or would have such ability in the future, is a matter of conjecture under the testimony in the case.

It is not disputed that the parents were entitled to damages for the pecuniary injuries sustained by them in being deprived of Elda's services and earnings prior to her reaching the age of 21, less the reasonable cost of her care, maintenance, and education prior to that time. She was on the date of the accident a student in the 10th grade of a high school, and it is a fair inference from the record that it was the purpose of the parents and of Elda that she would complete the high school course. The

so-called plan that when she had graduated from high school she would take her mother's job in the restaurant, so that the latter could return home, was not only tentative merely but is unsupported by any proof that such an arrangement was to be of permanent character, or should extend beyond the daughter's minority.

There is nothing in the testimony before us, including the excerpts therefrom above quoted, to justify a conclusion that the parents had undertaken to bind their 15-year-old daughter by an agreement to contribute her earnings to their support after she reached her majority, or that Elda contemplated any such situation. Obviously if she on attaining majority followed the course mapped out by her older sisters, such contributions would not have been made. The proofs show that Elda assisted in the ordinary housework, and that on occasions she did "baby-sitting" for others for which she received money. It does not appear that the amount so earned exceeded $5 per week, a part of which she, as it is claimed, gave to her mother. It must be borne in mind also that this 15-year-old girl was scarcely in position to bind herself by any definite agreement as to her future. As before stated, it does not appear that she undertook to do so. She was merely a normal child and conducted herself accordingly. The showing made by plaintiff is not sufficient to constitute proof that in later years, after attaining majority, she would assume any obligation to support her parents by contributions from earnings that she might have. Neither may it be assumed that if proceedings were at any time instituted to compel the children to contribute to the support of plaintiff, or of their mother, any obligation so resulting would have rested solely on Elda.

In *Cooper* v. *Lake Shore & M. S. R. Co.*, 66 Mich 261 (11 Am St Rep 482), the action was brought to

recover damages for negligently causing the death of a girl 11 years of age. Verdict was returned for the plaintiff in the sum of $1,550. Defendant appealed, asserting that the trial judge was in error in submitting to the jury the question of possible damages sustained by the parents of the child for the loss of pecuniary benefit that they would, save for her death, have received from her earnings for the balance of her probable life. In criticizing the charge as given, this Court pointed out (p 270) that it permitted the jury to speculate upon the future and consider "the probabilities or the possibilities of its unknown and unknowable contingencies." The following excerpt from the opinion indicates the conclusion reached by the Court (pp 271, 272):

"The statute authorizes the jury, in every case of this kind, to give such amount of damages as they shall deem fair and just to the persons who may be entitled to the same when recovered. Under this statute the jury are not warranted in giving damages not founded upon the testimony, or beyond the measure of compensation for the injury inflicted. They cannot give damages founded upon their fancy, or based upon visionary estimates of probabilities or chances. The rule of damages in actions for torts does not apply to actions of this kind. The statute gives the right to damages; but it has been held, with rare exceptions, that they must be confined to those damages which are capable of being measured by a pecuniary standard. Cooley, Torts (1st ed), p 271, and cases cited in note 2.

"In actions brought under the statute, where the parents are the persons entitled to damages, if the evidence shows that the deceased had been in the habit of making contributions from his own means to his parents, their damages might be based and estimated upon the customary contributions of deceased proven before the jury. *Chicago & N. W.*

*R. Co.* v. *Bayfield,* 37 Mich 205 (16 Am Neg Cas 87). But this rule is not applicable in the case of a very young child who has never made any contributions, and whom it is impossible to show ever will."

In the case at bar the parents were entitled to the earnings of Elda until she reached the age of 21, and were charged with the obligation of supporting her. The small amount that she earned and shared with her mother the parents were entitled to receive. She made no contribution from her own means, and obviously she was not in position to do so. The situation that might have been presented had she lived past her majority is a matter of conjecture only. The difficulty in presenting proof relating to future possibilities does not justify the allowance of damages in the absence of such proof. A jury may not be permitted to speculate and allow damages on the basis of sentiment.

In *Morris* v. *Radley,* 306 Mich 689, damages were sought for the death of a child less than 5 years of age. There was no basis in the record for any allowance of damages based on possible contributions that the child, after attaining majority, might have made to her parents, and this Court held that the trial court properly limited the recovery of damages to medical, hospital, and funeral expenses, and deceased's future earnings and contributions to her parents until her 21st birthday, less the reasonable expenses incurred by her parents in the child's maintenance. *Morris* v. *Radley* was cited with approval and followed in *Covell* v. *Colburn,* 308 Mich 240. Plaintiff's decedent in that case was 15 years of age at the time of the accident in which she received fatal injuries. There was no proof on which to base a finding that had she lived past the age of 21 she would then, during her majority, have made contributions to her parents.

Counsel for appellant have directed attention to *Judis* v. *Borg-Warner Corporation,* 339 Mich 313. There the action was brought by the father as administrator of the estate of his 23-year-old son. The proofs indicated that after attaining his majority the son had helped his father on the latter's farm, and had also contributed to his support in the sum of approximately $25 per month. Under the particular facts involved, and established by the proofs, it was held that, although the son had voluntarily assumed the obligation of assisting his father without any court order requiring him to do so, the parent, who was physically incapacitated, was entitled to the allowance of damages for his loss of the contributions made to him for his support by the adult son. In reaching such conclusion the Court (p 326) quoted with approval from *Clinton* v. *Laning,* 61 Mich 355, 360, as follows:

" 'We think that the voluntary assumption of this duty may fairly be regarded as performing a legal obligation, and that expenditures to a proper extent, within the limit which could be laid down by compulsion, are as valid charges as if they had been compelled, and may be considered as on a similar footing.' "

The holding in the *Judis Case* is not in point under the facts involved in the matter now before us, the decision of the Court there being based on what was actually being done by the adult son at the time of his death and not on any claimed plan of the parent made during the son's minority. The parents here could not bind Elda, even with her acquiescence, to follow a particular course of conduct after her majority. Because of her age and the fact that she was under parental control, she could not bind herself by any express agreement to support, or contribute to the support of, her parents after she

reached the age of 21. As before noted, however, it does not appear that any such arrangement was actually made between Elda and her parents. The "plan" related, so far as the testimony of the plaintiff indicates, only to the daughter's minority.

Attention is directed by counsel for appellant to decisions from other States which under the particular statutes and facts involved are said to recognize the right to recover damages for possible future contributions by a decedent, after attaining majority, to a parent or other dependent. Typical of such cases is *Bohrman* v. *Pennsylvania R. Co.*, 23 NJ Super 399 (93 A2d 190). There damages were sought on behalf of the parents of a girl 18 years and 7 months of age at the time of her alleged negligent killing. The proofs disclosed that the parents owned and operated, with the help of their daughter, a beauty shop, that the daughter had graduated from high school and had nearly completed a course in a beauty culture school, and that it was contemplated by the parties that the business of the parents was to be turned over to the daughter who was to assume its operation. The court concluded that the proofs justified submitting to the jury the question of allowing damages for loss of contributions of the daughter to her parents after attaining her majority, as well as the loss of her earnings during minority. The court concluded from the proofs that there was a "reasonable expectancy" of such contributions, and that the plaintiff had established the parents' claim of dependency on the services and earnings of their daughter. The fact that the daughter was to receive the business was naturally a matter for consideration. As suggested, the sufficiency of the proofs was in dispute, an issue as to which opinions may properly differ. Obviously, however, the situation developed by the evidence in the case differed materially from that in the case at bar.

It will be noted that the excerpts above quoted from the charge of the trial judge in the case at bar, which he concluded to be erroneous, permitted the jury to conjecture that dependency on the part of the parents might continue until their death, and that Elda, after attaining majority, would continue to make contributions to their support from her own earnings or other means unless and until prevented by inability on her part to do so due to death, sickness, or other causes. The door was thus opened to the jury to speculate concerning the possibilities of the future, and to indulge in the assumption that Elda might have assumed, or been charged with, the obligation for the sole support of her parents without assistance from her brothers and sisters. No reference was made to possible contributions to plaintiff's support by his other children. The charge also made no distinction between the parents as to dependency, although under the proofs it is apparent that Mrs. Thompson was fully capable of caring for herself and was, in fact, the main support of the family.

The trial judge was not in error in concluding that the charge as given by him was erroneous and that a new trial should be granted. The proofs in the case showed merely the ordinary situation of a 15-year-old child taking a normal part as a member of the household. No factual basis was established on which to predicate a finding of a "reasonable expectancy" that she would, after attaining the age of 21, make contributions to her parents or to either of them. In view of the situation presented by the record in this respect the court was in error in permitting the jury to determine damages on the basis that decedent, if she had lived to attain her majority, would have made contributions for the support of her parents from her earnings or other means possessed by her. Damages may not be awarded on

the basis of mere possibilities or conjectures as to what may happen in the future. The motion for a new trial was properly granted, and the discretion of the trial judge in declining to limit the issues thereon to the matter of damages should not be disturbed.

The order from which the appeal has been taken should be affirmed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.