*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAWAL DAHER and MOHAMAD JOMAA, Co-
Personal Representatives of the ESTATE OF
JAWAD JUMAA, also known as the ESTATE OF
JAWAD JOMAA,

        Plaintiffs-Appellees,

v

PRIME HEALTHCARE SERVICES-GARDEN
CITY, LLC, doing business as GARDEN CITY
HOSPITAL, KELLY W. WELSH, D.O., and
MEAGAN SHADY, D.O.,

        Defendants-Appellants.

FOR PUBLICATION
December 1, 2022
9:40 a.m.

No. 358209
Wayne Circuit Court
LC No. 20-004169-NH

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

RONAYNE KRAUSE, P.J.

In this medical malpractice action under the wrongful-death act, MCL 600.2922, defendants appeal by leave granted[1] the trial court's denial of defendants' motion for partial summary disposition, pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and MCR 2.116(C)(10) (no genuine issue of material fact). At least for purposes of summary disposition, it is not disputed that the decedent, Jawad Jumaa, who was then 13 years old, died of bacterial meningitis shortly after being treated by defendants. Plaintiffs allege that defendants committed medical malpractice by failing to diagnose and treat Jawad's bacterial meningitis. Defendants moved for summary disposition, arguing that plaintiff's claims for lost future earnings were speculative. The trial court disagreed. We affirm.

---

[1] *Estate of Jawad Jumaa v Prime Healthcare Services-Garden City, LLC*, unpublished order of the Court of Appeals, entered October 13, 2021 (Docket No. 358209).

# I. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. Whether a particular kind of damages is recoverable for a given cause of action is a question of law, which we review de novo. See *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242; 82 NW2d 660 (2013). The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

# II. WRONGFUL DEATH DAMAGES

Pursuant to MCL 600.2921, "[a]ll actions and claims survive death." However, "[a]ctions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to [the wrongful-death statute, MCL 600.2922]." *Id*. Such claims may be brought by the personal representative of the decedent's estate to the same extent the decedent could have brought those claims if the decedent had survived. MCL 600.2922(1) and (2). The decedent's parents are within the class of persons entitled to damages under the wrongful-death statute. MCL 600.2922(3)(a). Pursuant to MCL 600.2922(6),

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

Our Supreme Court has explained that "the wrongful-death act is essentially a 'filter' through which the underlying claim may proceed," noting that a wrongful-death action is not created upon the death of the decedent, but rather *survives* the death of the decedent. *Wesche v Mecosta Co Road Comm*, 480 Mich 75, 88-89; 746 NW2d 847 (2008).

## A. ENTITLEMENT TO DAMAGES

In *Wesche*, our Supreme Court explained that a wrongful-death action is a derivative claim brought by a decedent's personal representative in the decedent's shoes, the touchstone being whether the decedent could have maintained the action if death had not occurred. *Wesche*, 480 Mich at 90-91. Our Supreme Court explicitly described *Endykiewicz v State Highway Comm*, 414 Mich 377; 324 NW2d 755 (1982), as having espoused "a repudiated understanding of the

wrongful-death act" to the extent the *Endykiewicz* Court described a wrongful-death claim as a new action brought for the benefit of the beneficiaries named in the wrongful-death statute. *Wesche*, 480 Mich at 90.

In *Denney v Kent Co Road Comm*, 317 Mich App 727, 731-732; 896 NW2d 808 (2016), this Court explained that although lost earnings are not explicitly specified in MCL 600.2922(6), the Legislature's use of the word "including" meant that the enumerated list of kinds of damages available is not exhaustive; "[t]herefore, damages for lost earnings are allowed under the wrongful-death statute." In *Denney*, the decedent could have brought a claim sounding in negligence under the highway exception to governmental immunity for lost earnings resulting from bodily injury that the decedent suffered when two potholes caused the decedent to lose control of his motorcycle. *Id*. at 729, 735-737. Under the circumstances of that case, this Court agreed that a claim for lost financial support could not have been brought under the highway exception. *Id*. at 736. However, this Court observed that "a claim for lost financial support under the wrongful-death statute is not the same as a claim for lost earnings," the former being a claim brought by a person who depended upon the decedent, and the latter being a claim brought by the decedent on his or her own behalf. *Id*. at 736-737. "Because the damages are distinct, the fact that the wrongful-death statute allows for recovery of lost financial support does not change the character of plaintiff's claim for damages for the decedent's lost earnings." *Id*. at 737. This Court further expressly rejected the argument that the distribution of damages to the decedent's beneficiaries rather than to the estate altered its analysis. *Id*.

Defendants argue that the *Denney* Court's interpretation of MCL 600.2922(6) irreconcilably conflicts with precedent from our Supreme Court. Under MCR 7.215(J)(1), however, "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." We observe that *Denney* has not itself been overturned by our Supreme Court. Furthermore, the relevant legal principle from *Denney* has also not been overturned by our Supreme Court. Nevertheless, defendants argue that *Denney* was wrongly decided at the time pursuant to *Baker v Slack*, 319 Mich 703; 30 NW2d 403 (1948). We disagree.

In *Baker*, our Supreme Court addressed whether, under a predecessor to the current wrongful-death statute, the decedent's adult son, with whom the decedent lived, could recover damages for "pecuniary injury as the result of [the decedent's] death." *Baker*, 319 Mich at 705-706. "No testimony was introduced to establish that anyone was or had been dependent upon [the] decedent for support or maintenance or that there was anyone to whom she was morally or legally obligated to contribute." *Id*. at 706. In fact, to the contrary, the decedent was dependent upon the son, although she did have some "established earning capacity." *Id*. at 707-708. At that time, the applicable statute provided:

> Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and

-3-

reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death . . . [1940 CL Supp 14062; 1939 PA 297, § 2.]

Our Supreme Court interpreted the above language as providing for " 'pecuniary injury' to [the] decedent's surviving spouse or next of kin," which the Court observed "must be predicated upon the existence of some next of kin having a legally enforceable claim to support or maintenance by [the] deceased." *Baker*, 319 Mich at 714.

Critically, as discussed, our Supreme Court has explained that a wrongful-death action *used to be* construed as providing a new cause of action for the benefit of the beneficiaries. *Wesche*, 480 Mich at 90. The obsolete understanding of the nature of a wrongful-death action would be consistent with the *Baker* Court's analysis and holding. However, although not expressly cited in *Wesche*, our Supreme Court has necessarily—if implicitly—overruled the fundamental principle underlying the analysis and holding in *Baker*. We recognize that we are "bound to follow decisions by [our Supreme] Court except where those decisions have *clearly* been overruled or superseded," and we may not anticipate that a decision from our Supreme Court will be overturned. *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) (emphasis in original). Although "it is not always so easy to determine whether a case has been 'clearly overruled or superseded' by intervening changes in the positive law," such a conclusion may be easily drawn where "the Legislature has entirely repealed or amended a statute to expressly repudiate a court decision." *Id*. at 191 n 32. The statutory amendment at issue here is less extreme. Nevertheless, the wrongful-death act, as amended by 1931 PA 297, lacked the "including" language in the current statute. Thus, when it was considered by the *Baker* court, the wrongful-death act was not only understood to provide a fundamentally different kind of cause of action, the statute lacked the open-ended inclusiveness of the current statute. Either way, *Baker* has clearly been overruled or superseded, and it was no longer "good law" long before this Court decided *Denney*.

We therefore conclude that *Denney* is controlling, and pursuant to *Denney*, plaintiffs may recover damages for Jawad's lost future earnings to the same extent Jawad could have recovered those damages had he survived.

## B. CALCULATION OF DAMAGES

"The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). Although "there is inherent uncertainty regarding what the future may hold," "the measure of damages attributable to the loss of future earnings is left to the sound judgment of the jury despite the time element being uncertain, and the jury's award will not be disturbed if reasonable and within the range of the testimony and proofs presented." *Id*. at 104, citing *Vink v House*, 336 Mich 292, 296-297; 57 NW2d 887 (1953). Recovery of damages is not precluded "for lack of precise proof," nor must a plaintiff provide "mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable, particularly in circumstances in which the defendant's actions created

the uncertainty." *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014) (quotations omitted).

In an action for medical malpractice, an injured party may recover damages for future economic losses. MCL 600.1483(2); *Taylor v Kent Radiology*, 286 Mich App 490, 519; 780 NW2d 900 (2009). "Although economic losses are not defined under MCL 600.1483 or MCL 600.6305,[2] this Court has turned to the definition provided in MCL 600.2945(c) in order to determine whether a claim for damages in a medical malpractice action should be characterized as economic or noneconomic losses." *Taylor*, 286 Mich App at 519. Under MCL 600.2945(c), economic losses are defined as "objectively verifiable pecuniary damages arising from . . . loss of wages, loss of future earnings . . . or other objectively verifiable monetary losses." In *Hannay*, our Supreme Court explained that there was a difference between "work-loss damages" and "loss of earning capacity damages," the former being for income a person *would have* earned, and the latter being for income a person *could have* earned. *Hannay*, 497 Mich at 80-82.

In *Hannay*, our Supreme Court found evidence of work-loss damages for the plaintiff too speculative, despite evidence that the plaintiff was fully expected by a dentist and an experienced dental hygienist to become a dental hygienist, because too many contingencies needed to occur, such as admission to a dental hygienist program, successful completion of the program, and passing a licensing exam. *Hannay*, 497 Mich at 86-88. By necessary implication, loss of earning capacity permits much greater latitude. See *Health Call of Detroit*, 268 Mich App at 104. Nevertheless, the calculation must still be reasonably based on some evidence. See *May v William Beaumont Hosp*, 180 Mich App 728, 756; 448 NW2d 497 (1989)

We have found little clear authority in Michigan regarding a claim for a child decedent's lost wages or lost earning capacity. An early case did discuss a claim by parents for their child's lost earning potential. *Lincoln v Detroit & M. Ry Co*, 179 Mich 189, 193-195; 146 NW 405 (1914). However, at that time, "two statutes existed under which an action could be brought in cases of injury resulting in death: the survival act and the wrongful death act." *Hawkins v Regional Medical Laboratories, PC*, 415 Mich 420, 428; 329 NW2d 729 (1982). The two "claims were mutually exclusive and the measure of damages was substantially different." *Id*. at 430. We find *Lincoln* unhelpful because it was decided under a significantly different statutory scheme; furthermore, it concerned the child's earning potential during his minority, which would have belonged to the parents, and it did not discuss whether that earning potential was speculative. *Lincoln*, 179 Mich at 193-195. More recently, our Supreme Court discussed parents' entitlement under the wrongful-death act for loss of benefits they reasonably expected to receive from a deceased child after the child's majority, concluding that a majority of states permitted such recovery. *Thompson v Ogemaw Co Bd of Road Commrs*, 357 Mich 482, 488-489; 98 NW2d 620 (1959). The Court noted that "the most difficult of all questions involved in wrongful death cases" was "how definite must the evidence bearing upon pecuniary injury be to support a jury award?" *Id*. at 489-490. The

---

[2] Under MCL 600.6305(1)(b)(*ii*), a verdict or judgment rendered in a personal injury action shall include findings regarding any future damages, including "[l]ost wages or earnings or lost earning capacity and other economic loss."

Court concluded that, under the circumstances, there was evidence that the decedent had been healthy, intelligent, industrious, and had a history of earning money and contributing to family support, all of which "could reasonably be forecast into the future." *Id*. at 491-492.

The issue has also been addressed in other states.[3] In *Howard v Seidler*, 116 Ohio App 3d 800; 689 NE2d 572 (1996), the plaintiff brought a wrongful-death action for the death of her 11-year-old son, Vencinn, who died after being struck by an automobile. The plaintiff argued on appeal that the trial court erred by not allowing the jury to consider awarding damages for loss of the child's expected financial contributions to his mother's support. *Id*. at 808-809. The court held that, pursuant to Ohio law and precedent, parents were entitled to recover damages based on a minor child's lost future earning capacity, even if the child had never been gainfully employed; however, the trier of fact must consider "knowledge of the age, sex, and physical and mental characteristics of the child." *Id*. at 810-811. In *Howard*, the court found that "testimony regarding Vencinn's age, mental and physical characteristics, activities, and plans for his future," and testimony regarding Vencinn's sister's financial contributions to their mother's support, was sufficient to create an issue for the jury "as to whether Vencinn would have provided support to his family members, particularly his mother, after emancipation, and the dollar amount of that support." *Id*. at 812. The court also concluded that the trial court erred by excluding testimony from an economics expert to establish the decedent's lost future earnings. *Id*. at 807, 812-813. The court stated:

> As a matter of course, a jury must weigh evidence in determining the probability of lost future earnings of a decedent, whether that decedent be an adult with a wage earning history or a child too young to have been a wage earner at the time of death. Under the facts of the instant case, there was evidence that Vencinn was a normal eleven-year-old boy who had a good relationship with his family and who had aspirations to do something with his life in adulthood. There was clear evidence that his sister was well educated and well employed. There was also evidence that his sister provided financial support to Vencinn's mother. Upon these facts, there clearly was a foundation laid for the issue of whether Vencinn would have also provided support in adulthood to his mother.
>
> Rather than foreclosing evidence on this issue, in our view, the trial court should have permitted the development of testimony on this issue, by all parties, so that when the time came for deliberation, the jury would have had all it needed to make its factual determinations and to accept or reject, as it saw fit, the conclusions of the witnesses. The exclusion of [the expert's] testimony, under the facts of this case, was reversible error. [*Id*. at 813.]

In *Mecca v Lukasik*, 366 Pa Super 149, 154; 530 A2d 1334 (1987), several teenagers were killed in an automobile accident. At issue was, in part, whether an expert's testimony regarding the future earning potentials of the deceased teenagers was impermissibly speculative. *Id*. at 158-

---

[3] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 727 n 5; 957 NW2d 858 (2020).

159. The plaintiffs introduced evidence of the decedents' educational and career plans, including one girl's expectation to complete college and medical school. *Id*. at 159-160. The court acknowledged the difficulty of "project[ing] future wage loss of a deceased child," but found that economic expert's projections were supported by testimony regarding the decedents' parents' and siblings' careers and academic achievements. *Id*. at 160-161.

We think the above cases establish that a child's expected future earning potential is not *inherently* too speculative to permit recovery. The touchstone is whether that future earning potential can be proven with reasonable certainty based on the child's unique and known traits and abilities. There is no reason why the child must have an employment history. We decline to specify how old is "old enough," because different people mature at different rates, so that inquiry will inevitably depend on the specific child at issue. Nevertheless, it is well-known that at least by the end of middle school, it is common for teachers or other adults in a child's life to perceive when a child shows promise in a field, has any particular aspirations or strengths, displays developed personality characteristics such as conscientiousness or the kind of social adeptness that would likely evolve into adult networking skills, and so on. Furthermore, it is also well-known that a child's environment, including the child's parents, school system, general area of residence, participation in extracurricular activities, exposure to traumas or role models, and similar extrinsic influences will affect the child's future earning potential. We do not purport to set forth an exhaustive list of characteristics and influences, nor do we suggest that any of the above characteristics and influences are necessary. We hold only that it seems highly likely that the future earning potential of a 13-year-old can be proven with reasonable certainty based on personal characteristics and influences known at the time, and we unequivocally reject the proposition that the future earning potential of a 13-year-old categorically cannot be proven with reasonable certainty.

We further express no opinion regarding Jawad specifically. We granted leave to appeal limited to the issues in defendants' application, which in turn was limited to the argument that lost future earning potential was *inherently* impermissible or speculative for a 13-year-old who was neither working nor supporting anyone. We reject defendants' argument. The trial court therefore correctly denied defendants' motion for summary disposition. Whether *Jawad*'s future earning potential can be proven with reasonable certainty is a matter for the parties to address in the trial court on remand.

Affirmed. We direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen